**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Christopher P. DROGOUL, Defendant–Appellee.**

No. 93–8964.

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1993.

David T. Shelledy, Asst. U.S. Atty., Crim. Div., U.S. Dept. of Justice, BNL Task Force, Atlanta, GA, Sara Criscitelli, Crim. Div., U.S. Dept. of Justice, Washington, DC, for plaintiff-appellant.

Robert M. Simels, New York City, for defendant-appellee.

Before TJOFLAT, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

KRAVITCH, Circuit Judge:

This interlocutory appeal stems from a pretrial dispute in the government's prosecution of appellee Christopher Drogoul. The sole question before us is whether the district court abused its discretion in denying the government's motion to take the depositions of several foreign nationals in Italy. We hold that it did and, accordingly, reverse.

## I.

### A.

Drogoul was manager of the Atlanta branch of Banca Nazionale del Lavoro (BNL), a bank headquartered in Rome, Italy and owned largely by the Italian government. He is charged in a multicount indictment with, *inter alia,* wire fraud, conspiracy, and making false statements to government agencies. The crux of the government's allegations is that Drogoul defrauded BNL by making and concealing unauthorized loans and credit extensions totalling several billion dollars to agencies and instrumentalities of the Republic of Iraq.

Drogoul pled guilty in June 1992 to sixty counts of a 347–count original indictment.[1]

---

1. The charges to which Drogoul pled guilty were specified in an indictment returned against him in 1991. He originally pled not guilty, R. 1–7, but changed his plea in June 1992. He withdrew

The current trial-preparation phase of the litigation began on October 1, 1992, when the district court granted Drogoul's request to withdraw his guilty plea. Trial initially was set for April 5, 1993, but subsequently was rescheduled for September 8, 1993.

### B.

In April 1993, the government moved the district court for an order authorizing it to take the video and audiotaped depositions of thirteen[2] Italian nationals before an Italian judicial officer in Rome, for potential use at trial in the United States. The government averred that the prospective deponents' testimony is material to the prosecution, that the deponents are unwilling to testify in the United States, and that they cannot be compelled to do so. In a written order entered on April 30, 1993, the district court denied the government's request.[3] The court found that the government had shown neither that the witnesses are unavailable to testify in the United States nor that the procedures for taking the depositions would comport with due process.[4] The court noted in particular that "the government has failed to procure the affidavits of any of the witnesses themselves indicating that they are unwilling to travel to the United States for Drogoul's trial."[5] Accordingly, the court concluded that the government failed to demonstrate exceptional circumstances justifying the taking of foreign depositions. In addition, the court expressed concern that the government had approached Italian authorities as early as February 1993 to arrange for the possible taking of the depositions, but did not inform either the court or the defendant about its

intentions until April 1993 when it filed its original motion to take the depositions.[6]

In response to the district court's concerns regarding the prospective deponents' availability, the government enlisted the assistance of the Government of Italy to ascertain more conclusively the witnesses' willingness to testify in the United States. Pursuant to a treaty request lodged with the Italian government, an Italian judicial officer interviewed the thirteen potential witnesses as to whether they would travel to the United States to testify at Drogoul's trial. Six of the witnesses declared they would be willing to testify in the United States; seven declared they would not.[7]

Based on the witnesses' declarations—particularly those of the seven who indicated they would not testify in this country—the government moved for reconsideration of the order denying its motion to take foreign depositions.[8] Supporting this motion was a letter from the Italian magistrate who had interviewed the thirteen witnesses.[9] The letter certified that the seven witnesses had announced they would not testify at Drogoul's trial. Despite this new information, in an oral ruling rendered June 10, 1993, the district court refused to reconsider its earlier decision, apparently because the government's request was untimely under local court rules. *See* N.D.Ga.R. 220–6 (providing that motion for reconsideration must be filed within ten days after entry of order).

The government appealed, and we reversed. Because the government's "Motion for Reconsideration" was based in part on significant new information not contained in

---

his guilty plea in October 1992, and a superseding indictment was returned in July 1993.

2. In its original motion on April 21, 1993, the government requested permission to depose ten witnesses. It amended its request on April 29, 1993, adding three prospective witnesses to the list.

3. R. 1–248 at 6.

4. R. 1–248 at 2–3.

5. R. 1–248 at 3.

6. R. 1–248 at 3–4.

7. The six who would testify were Edmondo Alvisi, Lucio Costantini, Franco De Plano, Pierdomenico Gallo, Teodoro Monaco, and Gian Maria Sartorelli. The seven who would not testify were Angelo Florio, Nero Nesi, Giacomo Pedde, Giovanni D'Ercole, Marco Lunazzi, Francesco Bignardi, and Gerardo Ruggero.

8. R. 1–281.

9. R. 1–281 (attachment) (Letter from Prof. Giuseppe Morsillo, President, Court of Appeals of Rome, IV Penal Section, to Michael A. De Feo, Senior Counsel for International Law Enforcement, U.S. Dep't of Justice (May 31, 1993)).

its original motion—the letter from the Italian magistrate reporting the witnesses' in-court declarations—we held that the district court should have construed the motion as a timely renewed motion to take foreign depositions. *United States v. Drogoul*, No. 93–8840, 998 F.2d 1023 (11th Cir. July 16, 1993) (table). Accordingly, we remanded the case to the district court to consider the merits of the government's motion.

On remand, the district court denied the government's motion once more. This time the court did not focus on the availability of the witnesses or the materiality of their testimony: It "assum[ed] that the government has finally shown unavailability and materiality as required by Rule 15 [of the Federal Rules of Criminal Procedure]." [10] Rather the court held that the government "has not shown that the procedures surrounding the taking of the deposition testimony will meet constitutional standards." [11] In particular, the court had misgivings about the potential accuracy of the translation of the Italian testimony and about the provisions for Drogoul to engage in meaningful cross-examination. [12] The court also reiterated its earlier displeasure with the government's delay in notifying both the court and Drogoul of its intention to take the foreign depositions.

 The government's appeal from this order of the district court is what is at issue here. In view of the impending trial date (the district court's written order was entered on August 4, 1993; trial is scheduled to begin September 8, 1993), and the inordinate amount of time already spent litigating this narrow, pretrial issue, we granted the government's motion to expedite the appeal. Interlocutory appellate jurisdiction lies pursuant to 18 U.S.C. § 3731, because the district court's order has the practical effect of excluding evidence. [13] We now reverse.

## II.

 Depositions generally are disfavored in criminal cases. *United States v. Milian–Rodriguez*, 828 F.2d 679, 686 (11th Cir.1987), *cert. denied*, 486 U.S. 1054, 108 S.Ct. 2820, 100 L.Ed.2d 921 (1988). Their "only authorized purpose is to preserve evidence, not to afford discovery." *Simon v. United States*, 644 F.2d 490, 498 n. 12 (5th Cir.1981). [14] In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored. *United States v. Alvarez*, 837 F.2d 1024, 1029 (11th Cir.), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2003, 100 L.Ed.2d 234, *and cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988); *Milian–Rodriguez*, 828 F.2d at 686. Nevertheless, the Federal Rules of Criminal Procedure expressly authorize parties to take depositions and use them at trial, when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights.

Whenever due to exceptional circumstances of the case it is in the interest of

**10.** R. 2–364 at 3.

**11.** R. 2–364 at 3.

**12.** R. 2–364 at 4.

**13.** In criminal cases, the government may take interlocutory appeals from orders "suppressing or excluding evidence," up until the time the jury is sworn. 18 U.S.C. § 3731 (1988). Congress has directed the courts to construe this section liberally to effectuate its purpose of freely allowing interlocutory appeal by the government, while acknowledging and protecting the defendant's constitutional rights. *Id.; United States v. Posner*, 764 F.2d 1535, 1538 (11th Cir.1985). Thus, district court orders are deemed to exclude evidence for the purposes of this section whenever they have the practical effect of excluding evidence at trial. *In re Grand Jury Empanelled*, 597 F.2d 851, 856 (3d Cir.1979); *see In re Grand Jury Subpoena*, 646 F.2d 963, 968 (5th Cir. Unit B 1981) (allowing interlocutory appeal under § 3731 from order quashing grand jury subpoena).

Here, accepting the government's statements as true for purposes of the jurisdictional analysis, seven foreign nationals refuse to testify at Drogoul's trial. Those witnesses are, of course, beyond the subpoena power of the federal courts. Thus, precluding the government from taking the witnesses' depositions would have the practical effect of excluding their testimony. As such, section 3731 is satisfied, and appellate jurisdiction lies.

**14.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as circuit precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition....

Fed.R.Crim.P. 15(a).

At the trial ... a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used as substantive evidence if the witness is unavailable, as unavailability is defined in Rule 804(a) of the Federal Rules of Evidence, or the witness gives testimony at the trial or hearing inconsistent with that witness' deposition.

Fed.R.Crim.P. 15(e).

■■ The burden is on the moving party to establish exceptional circumstances justifying the taking of depositions. *See United States v. Fuentes–Galindo*, 929 F.2d 1507, 1510 (10th Cir.1991). Whether to authorize depositions is a decision committed to the discretion of the district court which will be disturbed only for an abuse of discretion. *United States v. Mills*, 760 F.2d 1116, 1120 (11th Cir.1985). For purposes of analysis, we divide the prospective deponents into two groups: the seven who have declared they will not testify at Drogoul's trial and the six who have declared they would. In Part III of the opinion, we discuss the district court's order as it relates to the former group. In Part IV we discuss it in relation to the latter.

### III.

### A.

■■ The primary reasons for the law's normal antipathy toward depositions in criminal cases are the factfinder's usual inability to observe the demeanor of deposition witnesses, and the threat that poses to the defendant's Sixth Amendment[15] confrontation rights. *Milian–Rodriguez*, 828 F.2d at 686; *United States v. Wilson*, 601 F.2d 95, 97 (3d Cir.1979); *United States v. Mann*, 590

F.2d 361, 365 (1st Cir.1978).[16] On the other hand, it is well established that when a witness is unavailable to testify at trial, former testimony given by that witness may be introduced consistent with the defendant's constitutional rights. *See, e.g., White v. Illinois*, —— U.S. ——, ——, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992); *Ohio v. Roberts*, 448 U.S. 56, 67–68, 100 S.Ct. 2531, 2540, 65 L.Ed.2d 597 (1980); Fed.R.Evid. 804(b)(1). Thus, ordinarily, exceptional circumstances exist within the meaning of Rule 15(a) when the prospective deponent is unavailable for trial and the absence of his or her testimony would result in an injustice. *See Alvarez*, 837 F.2d at 1029. The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case. *See United States v. Ismaili*, 828 F.2d 153, 159 (3d Cir.1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988); *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir.), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984). When a prospective witness is unlikely to appear at trial and his or her testimony is critical to the case, simple fairness requires permitting the moving party to preserve that testimony—by deposing the witness—absent significant countervailing factors which would render the taking of the deposition unjust.

### B.

In denying the government's motion to take foreign depositions the district court assumed that the government established the unavailability of the prospective deponents and the materiality of their expected testimony. The court held nonetheless that those factors were outweighed by countervailing considerations: the lack of guaranteed procedures protecting the defendant's due process rights and the government's supposed dilatory conduct in providing notice of its intent to seek the depositions. To determine whether these factors offset the unavailability of the

---

**15.** "In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him...." U.S. Const. amend. VI.

**16.** "Although this concern has been alleviated to a marked degree by the advent of modern audio-visual technology, the policy in favor of having the witness personally present persists." *Wilson*, 601 F.2d at 97.

witnesses and the materiality of their testimony, we must review the evidence regarding the prospective deponents' willingness to testify at trial and the importance of the deponents' testimony to the case. Accordingly, notwithstanding the district court's assumption that they were minimally satisfied, we elaborate on these two paramount considerations.

#### 1.

The moving party may demonstrate the probable unavailability of a prospective deponent "through affidavits or otherwise." *See Alvarez*, 837 F.2d at 1029. Significantly, that showing need not be conclusive before a deposition can be taken. *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir.1985). "It would be unreasonable and undesirable to require the government to assert with certainty that a witness will be unavailable for trial months ahead of time, simply to obtain authorization to take his deposition." *Id.* A more concrete showing of unavailability, of course, may be required at the time of trial before a deposition will be admitted in evidence. *See* Fed.R.Crim.P. 15(e). A potential witness is unavailable for purposes of Rule 15(a), however, whenever a substantial likelihood exists that the proposed deponent will not testify at trial. In that situation, justice usually will be served by allowing the moving party to take the deposition, thereby preserving the party's ability to utilize the testimony at trial, if necessary. *Id.* [17]

The government has made a strong showing that seven of the thirteen potential deponents are substantially unlikely to be available to testify at Drogoul's trial. Because the witnesses are foreign nationals located outside the United States, they are beyond the subpoena power of the district court. *See* 28 U.S.C. § 1783; *United States v. Farfan–Carreon*, 935 F.2d 678, 680 (5th Cir.1991); *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981). Under a treaty between the United States and Italy, potential witnesses may be ordered by the Italian government to testify in the United States, but one who refuses to do so may not be removed to this country. Treaty on Mutual Assistance in Criminal Matters, Nov. 9, 1985, U.S.–Italy, art. 15, 24 I.L.M. 1539, 1541.[18] Thus, the prospective deponents cannot be compelled to testify at Drogoul's trial. The government has proffered a letter from an Italian judicial officer (the authenticity of which Drogoul has not challenged) certifying that the seven witnesses have declared in open court their unwillingness to testify in the United States. This evidence is potent proof of unavailability for purposes of Rule 15(a). *See, e.g., Sindona*, 636 F.2d at 803 (noting that prospective witnesses specifically refused to come to the United States).

#### 2.

The government also has made a strong showing of materiality. Indeed, the expected testimony of all thirteen prospective deponents is highly material to this case. At a sentencing hearing prior to the withdrawal of his guilty plea, Drogoul asserted that his former BNL superiors in Rome were fully aware of his loan activities regarding Iraq.[19] Several pleadings which Drogoul has filed in

---

**17.** This assumes of course, that the deponent's expected testimony is material.

**18.** The treaty provides, in pertinent part:

1. The Requested State, upon request that a person in that State appear and testify in connection with a criminal investigation or proceeding in the Requesting State, shall compel that person to appear and testify in the Requesting State by means of the procedures for compelling the appearance and testimony of witnesses in the Requested State if:
 a. the Requested State has no reasonable basis to deny the request;
 b. the person could be compelled to appear and testify in similar circumstances in the Requested State; and
 c. the Central Authority of the Requesting State certifies that the person's testimony is relevant and material.
2. A person who fails to appear as directed shall be subject to sanctions under the laws of the Requested State as if that person had failed to appear in similar circumstances in that State. *Such sanctions shall not include removal of the person to the Requesting State.*
Treaty on Mutual Assistance in Criminal Matters, art. 15., 24 I.L.M. at 1541 (emphasis added).

**19.** R. 15 at 1705–18.

the district court indicate strongly that this contention will be a central defense theory at trial.[20] This defense goes to the very heart of the government's allegations that Drogoul went beyond the scope of his lending authority in extending credit to agencies of Iraq. The government expects the testimony of the prospective Italian deponents directly to refute Drogoul on this issue.[21]

Perhaps Drogoul expressed it best when he acknowledged in his brief to this court: "The testimony of these thirteen witnesses lies at the very core of the charges in the indictment, and its refutation the heart of the defense." Brief for the Defendant–Appellee at 5.[22] We can hardly imagine testimony more critical to this case.

### C.

Because the government established the key factors of probable unavailability and materiality (in this case, substantial materiality), the question becomes whether the district court acted within its discretion when it held that these considerations were, in this case, outweighed by certain countervailing factors.

### 1.

 Of "primary concern" to the district court were the potential accuracy of the translation from Italian of the deposition testimony and the availability (or unavailability) to Drogoul of meaningful cross-examination.[23] We believe these concerns to be largely premature and speculative. To the extent they are valid, they are insufficient to

counterbalance the government's need to preserve for possible use at trial testimony which Drogoul concedes goes to the very core of this case.

Nothing in the record suggests that a correct translation cannot be obtained in this case, or that Drogoul even will object to the translation. Translations are an established part of practice in the federal courts. *See, e.g.,* Fed.R.Crim.P. 28 (providing for appointment of interpreters). Moreover, the depositions in this case are to be both audio and videotaped. If a question does arise with respect to the translation, an appropriate translator may be appointed to review the tapes and help resolve the dispute. Until the depositions are taken and translated, and an objection lodged, it is sheer speculation that the translation will pose a problem in this case.

 Similarly, the district court's concerns regarding Drogoul's right of cross-examination are premature. To be sure, the defendant's right to confront witnesses is "the most important factor to be taken into account in determining whether to allow the use of a deposition at a criminal trial." *United States v. Keithan,* 751 F.2d 9, 12 (1st Cir.1984). We fail to see, however, how the mere *taking* of depositions threatens that right. Only when deposition testimony is sought to be introduced in evidence are the defendant's confrontation rights truly implicated. Before then the process is simply one of preserving testimony for *possible* subsequent use. At trial, if admission of the depo-

---

20. *See, e.g.,* R. 1–306 at 4 (Defendant's Memorandum of Law In Opposition To The Government's Motion In Limine To Preclude The Defendant From Offering Evidence of "Italian Scandals"); R. 1–327 at 6–7 (Defendant's Memorandum In Opposition to the Motion to Quash the Subpoena to Kissinger Associates); *see also* R. 1–176 at 4 (District court order of October 5, 1992, stating, in relation to Drogoul's withdrawal of his prior guilty plea, that defendant named several BNL superiors who knew of his activities). Indeed, Judge Shoob, the district judge originally assigned to this case, recused himself from further participation after the withdrawal of Drogoul's guilty plea in light of his "conclu[sion] that officials at BNL–Rome were aware of and approved Mr. Drogoul's activities." R. 1–176 at 6.

21. For example, three of the proposed deponents—Giacomo Pedde, Teodoro Monaco, and Angelo Florio—are the BNL officials who Drogoul asserts provided those authorizations. The government expects all three to deny that they approved the loans and credit extensions and to refute Drogoul's claims regarding the content of their conversations. Pedde and Florio were among the seven witnesses who declared they would not testify in the United States. Monaco was one of the six who said they would.

22. Similarly, at oral argument counsel for Drogoul conceded that the thirteen prospective deponents are as significant a group of witnesses as there will be in this case.

23. R. 2–364 at 4.

sition would violate the Sixth Amendment, the court could—indeed should—exclude the deposition. *See* Fed.R.Crim.P. 15(d) ("[T]he scope and manner of . . . cross-examination shall be such as would be allowed in the trial itself."). At that time, the district court will be in a superior position to analyze the confrontation issue, because it will be able to review the actual deposition transcripts, audiotapes, and/or videotapes to determine whether *in fact* introducing the depositions would be inconsistent with the defendant's constitutional rights. *See United States v. Salim,* 855 F.2d 944, 952 (2d Cir.1988). "This approach comports with both the purpose and language of Rule 15, which concentrates first on preservation of testimony and only thereafter focuses on admissibility." *Id.*

It might have been within the district court's discretion to deny the government's deposition request—notwithstanding the unavailability of the prospective deponents and the crucial nature of their testimony—were it abundantly clear that the depositions could not possibly be admitted at trial. The court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial. But such is not the case here. Although oral questioning by counsel generally is not permitted in Italian courts, the government apparently has received assurances that oral examination will be allowed. Even if it is not, defense counsel will be able to submit questions for the Italian court to ask. In addition, the depositions will be videotaped, enabling a jury to observe the demeanor of the witnesses. *See Milian–Rodriguez,* 828 F.2d at 686 (noting that depositions are disfavored in criminal cases because factfinder generally cannot observe witnesses' demeanor). Both Drogoul and his counsel may travel to the depositions at the government's expense. Fed.R.Crim.P. 15(c). Several courts of appeals have affirmed the use at trial of deposition testimony obtained pursuant to procedures akin to those proposed in this case. *See, e.g., United States v. Sturman,* 951 F.2d 1466, 1480–81 (6th Cir. 1991) (Swiss magistrate instructed defendants to object to proceeding in writing and

disallowed verbatim transcription), *cert. denied,* —— U.S. ——, 112 S.Ct. 2964, 119 L.Ed.2d 586 (1992); *Salim,* 855 F.2d at 951 (cross-examination conducted by French magistrate pursuant to submitted written questions). Thus, the likelihood that the Confrontation Clause would preclude admission of the highly material deposition testimony in this case is not so absolute as to warrant forbidding the government from at least preserving that testimony.

Likewise, the possibility that irremediable problems will develop with respect to translation of the depositions is too remote for one to conclude that taking the depositions would be a mere exercise in futility. If irreconcilable differences arise after the depositions have been taken and the translations made, then the depositions might properly be excluded from evidence at that time. *See Mann,* 590 F.2d at 366 ("When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence.").

In refusing to allow the government to depose the Italian witnesses, the district court failed to recognize the crucial distinction that exists between the propriety of *taking* depositions versus the propriety of *using* the depositions at trial. *See, e.g., Keithan,* 751 F.2d at 12. The court's concerns about the procedures surrounding the depositions are best addressed if and when the government seeks to introduce the depositions in evidence.

2.

The district court's second main reason for denying the request for foreign depositions was the government's purported delay in seeking the depositions and in notifying both Drogoul and the court as to its intentions. In a hearing shortly preceding the written order denying the government's request, the district court firmly announced that it "will not approve any such foreign depositions that will delay or interfere with the trial simply on that basis alone."[24] In its subsequent written order the court complained further

24. R. 20 at 110.

that "the government waited until April of 1993 to seek leave of court to take the depositions of the Italian witnesses keeping silent all the while about the possibility of foreign depositions."[25]

There can be no question that both the moving party's diligence and the timing of the prospective depositions are relevant considerations to be weighed under Rule 15(a). *See, e.g., Milian–Rodriguez,* 828 F.2d at 686. "An obviously important factor is whether a deposition will expedite, rather than delay, the administration of criminal justice." Fed.R.Crim.P. 15 advisory committee's note on 1974 amendment. By the same token, it is error rigidly to adhere to a trial schedule regardless of the all-important factors of unavailability and materiality. The ultimate inquiry is whether exceptional circumstances exist and whether it is in the interest of justice to allow the depositions to be taken. Fed.R.Crim.P. 15(a). When a substantial likelihood exists that the prospective deponents will be unavailable for trial and their testimony is highly relevant to a central issue in the case, justice generally requires preservation of that testimony. Absent a serious lack of due diligence by the moving party, therefore, precluding the taking of depositions under those circumstances is likely to frustrate, not expedite, the administration of criminal justice.

We hold that the district court erred to the extent that it denied the request for depositions solely on the ground that taking the depositions would delay the trial. As Drogoul has conceded, the expected deposition testimony goes to the heart of the issues in this case. Setting forth a *per se* rule against delay in the face of this crucial testimony is an abuse of discretion. *Cf. Mills,* 760 F.2d at 1120 (holding that district court erred in failing to exercise its discretion when it adopted absolute rule that deposition of a fugitive would be an injustice).

Furthermore, the district court grossly overweighed the government's dilatoriness in informing both it and Drogoul regarding the plan to depose the Italian witnesses. Rule 15(b) provides merely that the party taking the deposition "shall give to every party reasonable written notice of the time and place for taking the deposition." The reasonableness of the notice is a function of the time necessary for the opposing party to prepare for the deposition and thereby protect his rights. Here, the government filed its original motion on April 21, 1993. The motion requested that the depositions be taken May 25–28, 1993, more than a month later. This would have afforded Drogoul ample time to prepare. Rule 15 does not require a moving party to consult with the opposing party in advance regarding the scheduling of a deposition.

We do have some concerns about the fact that the government, which apparently was in contact with the Italian authorities as early as February 1993, did not move to take the depositions until late April 1993. We are also aware that allowing the depositions at this point might necessitate delaying the trial,[26] and that Drogoul already has been in jail for sixteen months. Nevertheless, when the government filed its original motion the rescheduled trial was almost five months away. The government then acted diligently in responding to the district court's original concerns regarding the unavailability of the witnesses, working with the Italian judiciary to obtain the in-court declarations of the prospective deponents regarding their willingness to testify in the United States. Immediately upon receiving the letter from the Italian magistrate, on June 4, 1993—still more than three months before trial—the government filed its renewed request to take depositions.[27] The district court erred in holding that the government's lack of due diligence outweighed the strong showing of unavailability and materiality in this case. Accordingly, the district court should have

---

25. R. 2–364 at 5.

26. Whether in fact to postpone the trial is not properly before us, however, and we decline specifically to address this question. *See infra* note 29.

27. Indeed, had the district court properly addressed the merits of the government's June 4 motion, there likely would be no question of delay of the trial.

allowed the government to depose the seven prospective witnesses who declared they would not testify in the United States.

## IV.

■ Exceptional circumstances and the interests of justice also warrant allowing the government to take the depositions of the six prospective witnesses who announced they would be willing to testify at Drogoul's trial. Whether to allow the depositions of these witnesses is, admittedly, a more difficult question than whether to allow the depositions of the other seven, because the government's showing as to the unavailability of these witnesses is obviously not as strong. We must remember, however, that unavailability is not the focus *per se* of Rule 15(a). Unavailability is required for *use* of the depositions at trial. Fed.R.Crim.P. 15(e). All that is necessary to *take* depositions is a showing that "exceptional circumstances" exist and that justice would be served by preserving the deposition testimony.[28]

■ In the ordinary case, exceptional circumstances do not exist when the prospective deponent has declared that he or she is willing to testify at trial. This is because the only proper use of a deposition in a criminal case is as substitute testimony when a material witness is unavailable for trial. As mentioned above, if there is very little chance that a deposition will be admissible—if the witnesses are available to testify live, for example—the district court need not engage in the wasteful practice of authorizing useless depositions. The instant case, however, is not ordinary.

■ For the reasons explained in Part III of this opinion, the government must be allowed to depose the seven witnesses who have stated they will not testify in the United States. Consequently, the parties will have to spend the time, money, and energy to take depositions in Italy. Far from being a substantial waste of time and resources, therefore, allowing the depositions of the six addi-

tional witnesses would involve the expenditure of only marginally more time, money, and effort. Furthermore, although the six prospective deponents stated in May 1993 that they were willing to come to the United States, they too are beyond the subpoena power of the United States courts. The possibility remains that they could change their minds, in which case it would be impossible for the government to present their testimony. This would be a serious consequence, because, as discussed in Part III.B.2., the expected testimony of the witnesses is highly material to the central issue of whether Drogoul was authorized to make the loans to Iraq.

Of course, before the depositions of the six could be used at trial the government would have to establish the deponents' unavailability. Fed.R.Crim.P. 15(e). This might be a difficult task in view of the witnesses' previous declarations. Nevertheless, we believe that three factors together—the significance to the case of the deponents' expected testimony; the fact that the deponents are beyond the reach of any American subpoena, and, *critically,* the fact that the parties already must take depositions in Italy—provide sufficiently exceptional circumstances to satisfy Rule 15(a). *Cf. Sindona,* 636 F.2d at 803 (allowing depositions of four witnesses, all of whom were beyond court's subpoena power, and two of whom specifically refused to come to the United States). The district court should have allowed the depositions of these prospective witnesses as well.

## V.

Rule 15 was designed to facilitate the preservation of testimony which may be needed to guarantee the deposing party a fair trial. *Salim,* 855 F.2d at 949. Seven of the prospective deponents have declared in open court that they will not testify at Drogoul's trial in the United States, and they cannot be compelled to do so. Although the other six have stated they intend to testify at trial, they too are beyond the subpoena power of

---

28. *Alvarez,* 837 F.2d 1024, the Eleventh Circuit case which discusses unavailability in the context of Rule 15, is not to the contrary. That case states only that the *"use* [of deposition testimony] is appropriate only in exceptional circumstances where the moving party has demonstrated ... that the witness is unavailable for trial." *Id.* at 1029 (emphasis added).

the federal courts and could, at a later date, refuse to testify; judicial economy weighs in favor of allowing the government to depose them at the same time it deposes the other seven. As noted above, the prospective deposition testimony, in Drogoul's own words, "lies at the very core of the charges in the indictment." It should be preserved so that the government may have a fair opportunity to prosecute this case.

The August 4, 1993 order of the district court denying the government's renewed motion to take the depositions of thirteen Italian witnesses in Italy is REVERSED. The case is REMANDED to the district court for further proceedings consistent with this opinion.[29]

---

**29.** In its brief, the government asks not only that we reverse on the foreign depositions issue, but also that we stay the trial until the depositions have been taken, a pretrial ruling on their admissibility has been made, and, if necessary, the government has had a reasonable opportunity to seek review by this court. Brief for the United States at 33. The government has not, however, asked the district court for a continuance. We generally require the district court to rule on the question of a stay in the first instance. *See, e.g.,* Fed.R.App.P. 8(a). Accordingly, we decline to address this issue at the present time.