See also 162 F.R.D. 372.

**UNITED STATES of America**

v.

**Jean Des MARTEAU, Sean McQuade.**

No. 94–87–Cr–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

April 26, 1995.

Ernst D. Mueller, Jim Klindt, U.S. Attorney's Office, Jacksonville, FL, for United States of America.

James H. Burke, Jr., Federal Public Defender, Jacksonville, FL, for Jean Des Marteau.

Quentin T. Till, Jacksonville, FL, for Sean McQuade.

### ORDER

SNYDER, United States Magistrate Judge.

### Background [1]

In 1993 the Drug Enforcement Administration (DEA) began an investigation into cocaine trafficking by certain Canadian individuals. During the course of this investigation Jean Des Marteau, who was seeking an American source to supply a large quantity of cocaine, was introduced to an undercover

---

1. The facts contained within the Background section were derived from the Report and Recommendation (Doc. # 80), entered on August 16, 1994. A more detailed recitation of the events leading up to the arrests of the Defendants is set forth within the Report and Recommendation.

DEA agent and they began negotiating the delivery of the narcotic to Montreal, Canada. Following a breach in negotiations, Mr. Des Marteau resumed contact with the undercover agent. A meeting in Burlington, Vermont, was arranged where 100 kilograms of cocaine were to be delivered to Des Marteau.

On May 19, 1994, Des Marteau met undercover law enforcement agents on the outskirts of Burlington and, after being provided the cocaine, was arrested. Des Marteau agreed to contact his partner, Sean McQuade, in an undercover capacity and arranged for McQuade to meet with the undercover DEA agent. McQuade, who was then in Canada, met the DEA agent and, after entering into the United States with him, was arrested.

### Status

This cause is now before the Court on Defendants' Joint Motion for Taking of Witness Depositions (Doc. # 139; hereinafter Motion), filed on February 24, 1995. The Motion requests an order allowing depositions to be taken from Real Simard, Constance Fortin, Michael Belanger, Lisa Lefebvre, Johame Broduer, Nathalie Dumont, Marie Fontaine, Talley Jordan, Michelle Beaudoin, David Patterson and J.P. (Joe) Tomeo, all of whom are located in Canada. *See* Motion at 1–2. The United States filed the Response to Defendants' Joint Motion for Taking of Witness Depositions (Doc. # 152; hereinafter Response) on March 24, 1995. An initial hearing on the Motion was held Friday, April 7, 1995. The Defendants filed their Notice of Intent to Waive Presence at Deposition (Doc. # 157; hereinafter Notice) on April 7, 1995, and a subsequent hearing on the matter was held on April 12, 1995.

At the April 12, 1995, hearing, both Defendants announced they were rescinding the Notice and insisted upon their right to be present at any depositions should the Court grant their Motion. *See* Order (Doc. # 161), entered on April 12, 1995. Defendants were directed to file supplemental memoranda addressing the issue of their right to be present at such depositions and the United States was ordered to respond thereto. *Id.* The Memorandum Regarding the Legal Authority on the Issue of Defendant's Right to be Present at Taking of Depositions in Canada (Doc. # 162) and Memorandum Regarding Defendant's Presence at Foreign Deposition (Doc. # 163) were filed on April 17, 1995. On April 20, 1995, the United States filed its Motion to Permit Filing of Memorandum One Day Out of Time (Doc. # 164; hereinafter Extension Motion), which is hereby GRANTED. Attached to the Extension Motion is the United States' Memorandum Relating to Defendants' Presence at Depositions in Foreign Countries (hereinafter Presence Opposition), which the Clerk of the Court shall hereafter file.

### Analysis

The taking of depositions in criminal cases is generally disfavored. *United States v. Drogoul*, 1 F.3d 1546, 1551 (11th Cir.1993). "In particular, because of the absence of procedural protections afforded parties in the United States, foreign depositions are suspect and, consequently, not favored." *Id.* However, Rule 15(a) of the Federal Rules of Criminal Procedure (hereinafter FRCrP) permits depositions in a criminal matter "[w]henever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial. . . ." A determination to grant or deny a motion for FRCrP 15 depositions is within this Court's discretion. *Drogoul*, 1 F.3d at 1552; *United States v. Ramos*, 45 F.3d 1519, 1522 (11th Cir.1995).

The moving party bears the burden of showing the existence of exceptional circumstances which justify the order of FRCrP 15 depositions. *Drogoul*, 1 F.3d at 1552. As set forth by the Eleventh Circuit in *Drogoul* and reiterated recently in *Ramos*, the Court must look to three factors in its analysis of whether "exceptional circumstances" exist. *See Ramos*, 45 F.3d at 1522–23 (citing *Drogoul*, 1 F.3d at 1554). These factors are whether the desired witness is unavailable to testify at trial, whether the witness' testimony is material to the moving party's case and whether the taking of the deposition would cause injustice to the nonmoving party. *Id.*

*Unavailability*

█ While use of a deposition at trial may necessitate a conclusive showing of a witness' unavailability for trial, such is not required prior to taking a FRCrP 15(a) deposition. *Drogoul*, 1 F.3d at 1553. What is required is "a substantial likelihood ... that the proposed deponent will not testify at trial." *Id.* The movant may use affidavits or other materials to establish probable unavailability of witnesses. *Id.* However, FRCrP 15 does not explicitly require supporting affidavits, and representations made by counsel in open court have been held sufficient to establish probable unavailability. *See United States v. Farfan–Carreon*, 935 F.2d 678, 679–80 (5th Cir.1991).

█ In the present case, the Defendants have made a sufficient showing as to their listed witnesses. All the witnesses named in the Motion are residents of Canada living in or about Montreal in the Province of Quebec. *See* Affidavit in Support of Defendants' Motion for Issuance of Letters Rogatory (Doc. # 141), filed on February 24, 1995, at 1. Thus, they are beyond the subpoena power of this Court. It is further asserted "[s]ome of the witnesses are hostile to the defendant or are unwilling to come voluntarily to this country to give their testimony...." *Id.* at 2. Although counsel for Defendant Des Marteau stated witness Nathalie Dumont may be willing to travel from Canada to Jacksonville and attend the trial, under the Eleventh Circuit's ruling in *Drogoul* it appears she may be deposed, nonetheless. Because Ms. Dumont has testimony material to the Defendants' case (as discussed below), is beyond the reach of any United States Court's subpoena, could change her mind about desiring to travel to Jacksonville to testify and, as set forth in detail below, the parties must travel to the Province of Quebec for other depositions, exceptional circumstances exist which justify taking Ms. Dumont's deposition. As to the remaining witnesses set forth in the Motion, the Court likewise finds the Defendants have sufficiently established their probable unavailability for trial.

*Material Testimony*

█ "The principal consideration guiding whether the absence of a particular witness's testimony would produce injustice is the materiality of that testimony to the case." *Drogoul*, 1 F.3d at 1552. "Under *Drogoul*, material is a term of art that means *material to the party moving to depose*." *Ramos*, 45 F.3d at 1523 (emphasis in original). A showing that testimony is material requires the movant make known to the court and opposing counsel the " 'thrust of the ... evidence....' " *Id.* (quoting *United States v. Sheffield*, 992 F.2d 1164, 1169 (11th Cir. 1993)). This showing "may be made by several means including affidavit, proffered testimony, or calling a witness to the stand; at the very least, the proffer must alert the district court to the substance of the evidence that is at peril of being excluded." *Id.*

█ Defendants claim witnesses Beaudoin, Patterson and Tomeo, all Canadian law enforcement officers, "were present at the defendants' arrest and can testify as to their mental condition during interrogation. They may also be able to testify about surveillance in Montreal." Motion at 3. The Court finds the proffer concerning testimony about surveillance activities speculative at best. Defendants have made no showing with respect to the likely substance of testimony concerning surveillance and it has not been stated how such testimony relates to any part of the Defendants' case. However, testimony from these witnesses concerning the Defendants' conduct during their arrest and interrogation would be material. Counsel for Defendants stated during the hearing these witnesses could testify as to the state of mind of McQuade and Des Marteau at the time their statements were taken and, specifically, that the Defendants were crying. Testimony concerning Defendants' emotional state at that time is material to the Defendants' impeachment of any statements made in response to the interrogation which will be offered by the United States. Thus, witnesses Beaudoin, Patterson and Tomeo may be deposed concerning the arrest and interrogation of the Defendants.

█ Des Marteau and McQuade seek to depose Lisa LeFebvre and Talley Jordan

concerning an alleged letter of credit which the Defendants apparently obtained and used in furtherance of the offense with which they are charged. Defendants' counsel represented the document is not a valid letter of credit and assert this contradicts testimony given by Drug Enforcement Administration Agent Burns during a previous hearing on a motion to suppress evidence. However, the Court is not convinced this testimony would be material to the Defendants' case. First, such testimony would not add to or detract from testimony from a government witness indicating the document was presented by the Defendants as a valid letter of credit to be used in the furtherance of the narcotics transaction. Second, during the suppression hearing Agent Burns acknowledged there was some dispute as to the validity of the document. See Transcript of Hearing, Motion to Suppress (Doc. # 94), filed on August 24, 1994, at 12–14. Moreover, it has not been shown how this testimony could exculpate the Defendants with respect to the crime charged or support an asserted defense. Therefore, based upon the record now before the Court, witnesses LeFebvre and Jordan shall not be deposed.

Defendants contend witness Simard should be deposed because he served as one of the confidential informants for law enforcement and "coerced and entrapped" the Defendants. Motion at 2. It is contended witnesses Fortin, Belanger, Broduer, Dumont and Fontaine observed the Defendants and one or more of the confidential informants during their meetings. Based upon the representations of counsel during the hearing on the instant motion it is clear the entrapment defense is intended to be used by the Defendants at trial. See also Motion to Compel Disclosure of Entrapment (Doc. # 100), filed on September 15, 1994.

The Court finds the Defendants have adequately established the materiality of the aforementioned witnesses' testimony as to an entrapment defense. Government inducement of criminal activity and the defendant's lack of predisposition to the activity must be proven to prevail under a claim of entrapment. *United States v. Brown*, 43 F.3d 618, 623 (11th Cir.1995). When assert-

ing this defense, the defendant bears the initial burden of establishing inducement by the government. *Id.* Mere suggestion of criminal activity or initiation of contact by a government agent is not sufficient to show inducement; rather, the defendant must prove "an element of persuasion or mild coercion." *Id.* "[I]nducement consists of opportunity plus something like excessive pressure or manipulation of a non-criminal motive." *Id.* As a government agent alleged to have engaged in acts of coercion and entrapment, Mr. Simard's testimony concerning his meetings with Des Marteau and McQuade is clearly material with respect to the entrapment defense. Likewise, because they have observed Defendants' meetings with Simard and other confidential informants and are claimed to have observed such acts, the remaining witnesses have knowledge material to this defense.

*Injustice to the United States*

The United States has noted several reasons for objecting to the Motion. It objects to the Motion in part by arguing "none of [the witnesses] has knowledge which is not shared by other available witnesses and/or is indispensable to the fair administration of justice in this case." Response at 2. First, no authority has been cited which establishes this to be the standard for determining whether to grant an FRCrP 15(a) motion for depositions. As discussed above, the analysis is based upon whether the testimony of the witness is material to the movant. Second, the United States has not clearly established the knowledge of each of the witnesses sought to be deposed is shared by other available witnesses. The United States also points to the tremendous expense which would be involved in conducting the depositions and that one trip to Canada has already been made by counsel for the Defendants. *See* Response at 2. However, expense alone does not amount to an injustice adequate to deny the Defendants the opportunity to prepare their defenses.

*Presence of the Defendants*

As stated previously, the Defendants now insist upon their right to be present at

the taking of the depositions. The United States first argues there is no absolute right for a defendant to be present at FRCrP 15 depositions and "[i]t is obvious that Fed. R.Crim.P. 15 and 18 U.S.C. § 3503, when drafted, did not contemplate and were not intended to extend to situations in which a defendant was in custody and a deposition was to be taken abroad." Presence Opposition at 2.[2] However, the United States has not provided any authority to support the contention that the presence, at a foreign deposition, of a defendant in custody was not intended by either FRCrP 15 or 18 U.S.C. § 3503. Indeed, these rules do not distinguish between domestic and foreign depositions.

It is additionally noted that, in *Drogoul,* the Eleventh Circuit discussed the confrontation implications which arise with respect to these depositions, stating:

> The defendant's right to confront witnesses is "the most important factor to be taken into account in determining whether to allow the use of a deposition at a criminal trial." *United States v. Keithan,* 751 F.2d 9, 12 (1st Cir.1984). We fail to see, however, how the mere *taking* of depositions threatens that right. Only when deposition testimony is sought to be introduced in evidence are the defendant's confrontation rights truly implicated. Before then the process is simply one of preserving testimony for *possible* subsequent use.

*Drogoul,* 1 F.3d at 1554 (emphasis in original). Nonetheless, the Eleventh Circuit indicated a defendant and his attorney may be allowed to attend depositions held in a foreign nation. *Id.* at 1555.

The United States further asserts two practical difficulties which would arise if the Defendants are allowed to be present for the taking of depositions in Canada. It is claimed "the [United States] Marshal who has custody of the defendant, in reality has no legal authority to produce anybody, in an in-custody status, in a foreign country." Presence Opposition at 2. The United States argues:

> If the defendants were to return to Canada, either because released on bond for purposes of attending the depositions in question, or otherwise, there is nothing which the United States could do to prevent their taking legal steps while in Canada which would preclude their returning to the United States, after they had arrived in Canada.

*Id.* at 3. The United States also claims the Mutual Legal Assistance Treaty with Canada,[3] which it has agreed to utilize to facilitate the taking of depositions should the Motion be granted, does not contemplate the transfer of an individual in custody under these circumstances. *Id.* at 4.

The Court, however, is not convinced these concerns justify conditioning the granting of the Motion "upon the defendants waiving any arguable right they may have to be present ..." as the United States suggests. Presence Opposition at 2. In *United States v. Salim,* 855 F.2d 944 (2nd Cir.1988), the defendant was in federal custody "but could not be transported to France to attend the deposition because the United States Marshals Service lacked authority to keep him in custody in France." *Id.* at 947. The Second Circuit in *Salim* held that "since the government made reasonable efforts to produce [the defendant] at the taking of the deposition and defense counsel conducted a lengthy cross-examination of the witness" the fact the defendant was not present at the deposition did not invalidate the testimony preserved thereby under FRCrP 15. *Id.* at 950. In *Salim,* "efforts were made to have two open telephone lines available between the court in France and the courthouse in the United States to enable [the defendant] to hear [the witness'] deposition testimony on one line and to consult privately with his attorney on the other line." *Id.* at 947. However,

---

**2.** As in Rule 15(b) of the Federal Rules of Criminal Procedure, Title 18, Section 3503, of the United States Code permits the taking of depositions in a criminal case for the purpose of preserving testimony. Section 3503(b) specifically provides "[t]he officer having custody of a defendant shall be notified of the time and place set

for the examination, and shall produce him at the examination and keep him in the presence of the witness during the examination."

**3.** *See* Treaty With Canada on Mutual Legal Assistance in Criminal Matters, 24 I.L.M. 1092 (1985).

French law would not permit such a practice and this effort was rebuffed by the French judicial officer, as were requests by the government to record the deposition. *Id.*

The Court accepts the United States' contention the transfer of the Defendants to Canada to attend any depositions would result in unnecessary complication due to the lack of authority by the United States Marshals Service to keep the Defendants in custody and the possibility of an attempt by the Defendants to utilize legal maneuvers in Canada to prevent their return to this country following the depositions. This, however, does not merit conditioning the granting of the Motion on the Defendants waiving any right to be present. As indicated by the Second Circuit in *Salim*, the government must make reasonable and diligent efforts under such circumstances to assure the Defendants their right to be present, even if such presence is through live audio and/or video transmission.

Although presumably cited by the United States in support of its argument the Defendants need not be present for any depositions in Canada, *see* Presence Opposition at 2, the *Salim* decision does not fully support the United States' assertions on this issue. First, whereas *Salim* requires the government make diligent efforts to procure the presence of the defendant at a deposition, the United States seeks in this case to totally preclude the Defendants' presence. Second, in *Salim* the government sought to ensure live telephonic and, alternatively, audio and video, connections with the foreign deposition, while in the present case the United States steadfastly maintains such alternatives are not appropriate because they were not contemplated by the drafters of FRCrP 15.

▮ The United States contends other Courts which have made use of available technology to enable the presence of defendants at depositions were "simply being improvisational in administering a statute which says nothing whatever about radio or tele-

phone, but yet was drafted in times when the existence of such instruments was certainly known." Presence Opposition at 3. The Court finds this argument without merit. "Where the defendant is in the government's custody, the government must take measures to protect the defendant's rights of confrontation even where circumstances do not permit direct confrontation. . . ." *In re Letters of Request From S.Ct. of Hong Kong*, 821 F.Supp. 204, 209 (S.D.N.Y.1993). Decisions by other Courts indicate the use of telephonic and/or video connections to be reasonable and acceptable methods of permitting a deposition to preserve testimony to occur even though the defendant may not be physically present. *See United States v. Gifford*, 892 F.2d 263, 264–65 (3rd Cir.1989), *cert. denied*, 497 U.S. 1006, 110 S.Ct. 3243, 111 L.Ed.2d 754 (1990); *United States v. Sines*, 761 F.2d 1434, 1441 (9th Cir.1985). Further, Defendants' contention they must be allowed to be physically present at the depositions cannot be accepted under the circumstances of this case. The *Gifford, Salim* and *Sines* decisions make clear physical presence is not an absolute requirement of FRCrP 15.

The Court finds the United States has not set forth factors showing it would be an injustice to preserve the testimony of these witnesses through deposition. Thus, as the Defendants have established certain witnesses may be unavailable and are likely to provide material testimony, the depositions shall take place as set forth within this Order. However, the Court accepts the United States' position that permitting Defendants to attend the depositions in Canada would create an unreasonable risk. Therefore, Defendants shall not be permitted to be physically present during their taking.

### Conclusion

Accordingly, the Motion (Doc. # 139) is **GRANTED** to the extent the Defendants may depose witnesses Simard, Fortin, Belanger, Broduer, Dumont, Fontaine, Beaudoin, Patterson and Tomeo.[4] Otherwise, the Motion is **DENIED.**

---

4. Because a cooperative relationship allegedly exists between United States law enforcement agents and witnesses Beaudoin, Patterson and

Tomeo, the United States may consider using its best efforts to arrange the cooperation of these witnesses to be debriefed initially by Defendants'

During one of the hearings the United States represented that, should the Court order the depositions requested by Defendants, the most expedient method of facilitating them would be through an existing Mutual Legal Assistance Treaty[5] between the United States and Canada. This option was suggested as an alternative to the Court issuing letters rogatory as initially sought by the Defendants. *See* Defendants' Motion for Issuance of Letters Rogatory (Doc. # 140; hereinafter Motion for Letters Rogatory), filed on February 24, 1995. Counsel for the Defendants verbally consented to use of the Mutual Legal Assistance Treaty as suggested; thus the Motion for Letters Rogatory is MOOT. As the parties have agreed to utilize the aforementioned treaty, they shall use all efforts to ensure the depositions are conducted expeditiously and consistent with this Order.

Although the Defendants will not be physically present, the United States shall ensure their attendance at the depositions via live telephonic connection and shall also make available private telephone lines so the Defendants may converse with their attorneys, who will be present at the depositions. The depositions shall be recorded on video and audio tape. An interpreter shall be present for those witnesses who do not speak English.

As a condition precedent, the Defendants shall provide to the United States accurate addresses for the witnesses within five (5) days from the date of this Order and the parties shall meet and agree upon an appropriate schedule. Any witnesses who cannot be located at a given address or for whom an address is not available shall not be deposed. The depositions shall otherwise be conducted in a manner consistent with the provisions set forth in FRCrP 15.

attorneys to determine whether complete depositions would indeed be necessary.

5. The United States, after communicating with its Office of International Affairs, informed the Court it is appropriate to utilize the treaty in this manner. The Court accepts this representation.