[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13868
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20101-FAM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO SANTOS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 17, 2012)

Before BARKETT, FAY and EDMONDSON, Circuit Judges.

PER CURIAM:

Armando Julio Santos Vasquez ("Santos") appeals his convictions and 120-

months' sentence for conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349; health care fraud, in violation of 18 U.S.C. § 1347; and making false statements related to health care matters, in violation of 18 U.S.C. § 1035(a)(2).  As to his convictions, Santos argues that the district court abused its discretion under Fed. R. Crim. P. 15, and violated his Confrontation Clause rights, by allowing the introduction of a witness's video deposition testimony at trial, because he had been unable, through no fault of his own, to effectively cross-examine the witness during the deposition.  He also argues that his 120-months' sentence, which is an upward variance from the sentencing guidelines range of 41 to 51 months, is substantively unreasonable.

## I.  Background

The government sought to prove that Santos, a registered nurse, while working for a Miami-based home health care agency was part of a conspiracy to fraudulently bill Medicare for medical services that were never provided. Specifically, the government contended that Santos prepared nursing progress notes which stated that he had visited and injected homebound patients, Klebe De La Cruz and Caridad Pizzorno, with insulin twice a day, seven days a week when in fact he did not.  The government presented testimonial and documentary evidence to establish that neither De La Cruz nor Pizzorno was diabetic and both

2

women testified that they did not receive any insulin injections as reported. De La Cruz also testified that she received $500 a month in cash in exchange for signing the Medicare forms. Santos testified on his own behalf that he injected the patients with insulin as indicated on the progress notes. Medicare paid the home health care agency $20,430 for De La Cruz and $54,010 for Pizzorno for the home health care services attested to by Santos.

Just prior to the commencement of Santos's trial, the government moved to introduce the video deposition testimony of Pizzorno, in lieu of her in-person testimony, and that had been taken pre-trial pursuant to Fed. R. Crim. P. 15. Pizzorno who was elderly, had been suffering from a terminal and incurable form of liver cancer, and was unable to travel from Ohio for the trial. Santos opposed the admission of the video deposition, arguing that the government did not give him, before the deposition, a report from the Federal Bureau of Investigation ("FBI") indicating that Pizzorno had failed to identify him in a photographic lineup as the home health care nurse who treated her, and instead identified another man as that person.[1] He argued that, as a result, he did not have an opportunity to fully and effectively cross-examine her during the deposition.

---

[1] Santos asserts that he did not receive this particular FBI report until the day before the pre-trial hearing on the government's motion to use Pizzorno's video deposition at trial.

Although Santos conceded that he received, before the deposition, a different FBI report that mentioned a second photographic lineup, he argued that this report did not put him on notice to ask Pizzorno about her inability to identify him because it did not specifically indicate that Santos's photo was included in that lineup. He argued that this second FBI report merely noted that Pizzorno "was shown a photo spread with MES employees but did not recognize any of the photos." The government offered to stipulate that Pizzorno failed to identify Santos in two photographic lineups on two prior occasions.

After considering the parties' arguments and the government's stipulation, the district court permitted the introduction of Pizzorno's video deposition testimony finding that the FBI report that Santos received before the deposition sufficiently put him on notice to ask Pizzorno about her inability to identify him, even assuming he had not received the other FBI report. At trial, after the government played Pizzorno's video deposition, it read the following stipulation to the jury:

> The United States of America and the defendant through his undersigned counsel stipulate and agree to the following: That on June 9th, 2009 and January 19th, 2011 agents showed a photographic lineup to Caridad Pizzorno, which contained the defendant's photograph, and Ms. Pizzorno was unable to identify the defendant.

## II. DISCUSSION

4

Santos argues that because he had not been given, prior to the deposition, the FBI report in which Pizzorno failed to identify him from the photograph lineup, the district court abused its discretion under Fed. R. Crim. P. 15(f) and violated his right to cross-examination under the Confrontation Clause by admitting the video deposition. He argues that had he been able to cross-exam Pizzorno as to the FBI report in which she specifically could not identify him, the jury would have been left with a significantly different impression of her reliability and credibility.

The taking of and use of depositions are generally discouraged in criminal trials because of the factfinder's inability to observe the demeanor of deposition witnesses, and because of the threat posed to the defendant's Confrontation Clause rights. *United States v. Drogoul*, 1 F.3d 1546, 1552 (11th Cir. 1993). "Nevertheless, the Federal Rules of Criminal Procedure expressly authorize parties to take depositions and use them at trial, when doing so is necessary to achieve justice and may be done consistent with the defendant's constitutional rights." *Id.* at 1551. *See also* Fed. R. Crim. P. 15(f) ("[A] party may use all or part of a deposition as provided by the Federal Rules of Evidence."). Under Federal Rule of Evidence 804(b)(1), deposition testimony may be admitted when a declarant is unavailable, the deposition was "taken in compliance with the law," and the

5

defendant "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" as the defendant would have had at trial. While district court's have discretion to rule on the admissibility of evidence, "this discretion is limited by the guarantee of the Sixth Amendment's Confrontation Clause that a criminal defendant has the right to cross-examine prosecutorial witnesses." *United States v. Maxwell*, 579 F.3d 1282, 1295 (11th Cir. 2009) (internal quotation marks omitted). "To be sure, the defendant's right to confront witnesses is the most important factor to be taken into account in determining whether to allow the use of a deposition at a criminal trial." *Drogoul*, 1 F.3d at 1554. If admission of a deposition would violate the Confrontation Clause, the district court should exclude the deposition. *Id.* at 1554–55. The test for the Confrontation Clause is "whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Maxwell,* 579 F.3d at 1296.

Initially, we cannot say that the district court abused its discretion by allowing Pizzorno's video deposition testimony under Fed. R. Crim. P. 15 because Santos had an opportunity and similar motive to cross-examine Pizzorno during the deposition, as required by Fed. R. Evid. 804(b)(1). Both Santos and his attorney were present at the deposition and his attorney questioned Pizzorno

6

extensively about her memory loss and health problems, and thus, called into question her ability to remember him or his treatment of her medical conditions. Furthermore, although he argues that he did not receive the FBI report that informed him that Pizzorno previously failed to identify him specifically in a photographic lineup, he admittedly received the other FBI report that indicated that she failed to identify MES employees, of which Santos was one. He thus had the opportunity to question her about this photographic lineup but chose not to do so. In addition, the jury heard the government's stipulation that Pizzorno failed to identify Santos in two photographic lineups on two separate prior occasions.

However, even if the district court properly admitted the video deposition testimony under the federal rules of evidence, we must consider whether its admission nonetheless violated Santos's Confrontation Clause rights. Santos argues that his constitutional rights were violated because had he been able to question Pizzorno about her failure to identify him in the photographic lineup "a reasonable jury would have received a significantly different impression of [her] credibility." *Maxwell,* 579 F.3d at 1296. He argues that the jury would have had no reason to believe anything that she testified to had they heard this additional example of Pizzorno's failed memory, and therefore, would have believed that his testimony was the more reliable account of the past events.

7

We, however, need not decide whether the admission of the video deposition testimony violated Santos's Confrontation Clause rights because we conclude that such error, assuming it occurred, was harmless. *United States v. Gari*, 572 F.3d 1352, 1361 (11th Cir. 2009) (explaining that Confrontation Clause errors are subject to harmless error analysis). Harmless error occurs when it is "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 1362. When making that assessment, reviewing courts consider a "host of factors" including, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

Here, the jury was informed via the stipulation that Pizzorno had not been able to correctly identify Santos from a photographic lineup on two prior occasions.[2] His attorney also cross-examined Pizzorno extensively during her

---

[2] Although Santos argues that this evidence supports his theory that Pizzorno's memory was so faulty that the jury would not believe anything she testified to, it is also plausible that a reasonable jury could believe that the reason Pizzorno failed to identify Santos was because he did not visit her at her home twice a day, seven days a week over a two month period as he testified that he had.

deposition about her faulty memory. Thus, the jury was well aware of the infirmities with Pizzorno's testimony as they pertained to memory-loss. In addition, the jury heard other evidence, independent of Pizzorno's testimony, that supported the conclusion that Pizzorno was not diabetic. A medical assistant from the medical center where Pizzorno was receiving treatment at the same time the home health care agency was allegedly providing her services testified that Pizzorno could care for herself. Her medical records from the medical center did not contain any diagnosis of diabetes or prescription for insulin. Other witnesses, including one former registered nurse who also had worked for the home health care agency in a capacity similar to Santos, testified as to their roles in the Medicare fraud. An FBI agent who had interviewed Santos testified about the conflicting answers that Santos gave regarding his Medicare related paperwork. Finally, although Santos testified that he injected Pizzorno with insulin as reflected in the paperwork, "the jury was free to disbelieve [him] and use [his] testimony as substantive evidence" in support of his guilt. *United States v. Williamson,* 339 F.3d 1295, 1301 n.14 (11th Cir. 2003).

Santos next argues that his 120 months' sentence, which is an upward variance from the sentencing guidelines range of 41 to 51 months' imprisonment, is substantively unreasonable. We examine whether a sentence is substantively

9

reasonable in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors.[3]  *Gall v. United States*, 552 U.S. 38, 51 (2007).  The "weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court."  *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). If the district court sentences a defendant outside the guideline range, it should explain why the variance is appropriate in that particular case.  *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (quotation omitted).  The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the § 3553(a) factors.  *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005).

Here, we cannot say that Santos has met his burden of establishing that his total sentence was unreasonable based on the record and the § 3553(a) factors. The district court justified imposing the upward variance because Santos was a healthcare professional who breached his position of trust, he engaged in a conspiracy for several months, he committed perjury, he showed a lack of remorse, and the need for deterrence in the healthcare field was high.  Furthermore, contrary

---

[3] The § 3553(a) factors to be considered include, among others:  (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct; and (4) the applicable guideline range.  18 U.S.C. § 3553(a).

to Santos's assertion, the district court gave adequate consideration to the disparity between his total sentence and the sentences of his co-conspirators.  Although the court placed greater weight on deterrence and Santos's refusal to accept guilt, the weight to be given any of the § 3553(a) factors is committed to the district court's discretion.  *Clay*, 483 F.3d at 743.

**AFFIRMED.**