UNITED STATES of America,
Plaintiff-Appellee,

v.

Ramon MILIAN–RODRIGUEZ,
Defendant-Appellant.

No. 86–5036.

United States Court of Appeals,
Eleventh Circuit.

Sept. 28, 1987.

Fred A. Schwartz, Entin, Schwartz, Barbakoff & Schwartz, Lorraine C. Holmes, North Miami Beach, Fla., for defendant-appellant.

Leon B. Kellner, U.S. Atty., Linda Collins Hertz, Stephen Schlessinger, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before TJOFLAT and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

## I.

### A.

Ramon Milian-Rodriguez, the appellant in this case, is a Florida-based certified public accountant who served as the registered agent of Cambios Monetarios Internacional, S.A. (Cambios), a Panamanian company engaged in currency trading, exchange, and investment. In his capacity as Cambios' registered agent in the United States, appellant was empowered to conduct business on behalf of that company. Beginning in November 1982, agents assigned to Operation Greenback, a Miami-based federal task force investigating currency violations, received information from law enforcement authorities in Panama that appellant was traveling frequently to Panama with extremely large sums of United States currency. Upon checking government records, federal agents found that neither Cambios nor appellant had filed Currency Transaction Reports (CTRs) and Currency and Monetary Instrument Reports (CMIRs), as required by federal law, see 31 U.S.C. §§ 5313, 5316 (1982).[1] Accordingly, the Government began an investigation of appellant and placed him under scrutiny.

On two occasions in April 1983, federal agents observed appellant departing for Panama aboard his Lear jet, which had been loaded with suspicious cargo. They subsequently confirmed that the cargo consisted of large quantities of United States currency, for which none of the requisite disclosure forms had been filed. On the morning of May 4, 1983, federal agents, who had reason to believe that appellant would be making another trip to Panama, saw appellant's plane being loaded in precisely the same manner as on the two pre-

vious occasions. After appellant arrived at the airport and boarded the plane, the airport control tower personnel received the Lear jet's flight plan, which indicated that the plane would be traveling non-stop to Panama. Appellant had not filed a CMIR in connection with this flight, although he could have complied with that law at any time before boarding the plane. See United ed States v. Rojas, 671 F.2d 159, 162–63 (5th Cir. Unit B 1982).[2]

When appellant's jet proceeded to the runway for takeoff, federal agents stopped the plane, escorted the passengers and crew away from the aircraft, and searched the cabin. The cabin search revealed approximately twenty boxes containing almost $5.5 million in United States currency. In addition, the agents found appellant's attache case in the cabin. This case contained detailed records concerning appellant's money-laundering activities and documenting his transportation of approximately $146 million to Panama between August 1982 and April 1983.

While the search was taking place, the agents took appellant to an office located in the airport complex. Federal agents informed him that he was not under arrest. Nonetheless, while awaiting the completion of the search, appellant told an agent that he wished to speak with the individual who was in charge of the investigation. Two senior Customs agents then met with appellant in the airport office of his company, Consolidated Courier Service. He offered his full cooperation, at which time the Customs agents summoned an Assistant United States Attorney and read appellant his rights.

Apparently seeking to become a government informant, appellant proceeded to admit his deep involvement in an international narcotics and money-laundering network, describing himself as the biggest money launderer in the country and characterizing his clientele as the "who's who" of the

---

1. Unless otherwise noted, the statutory citations in this opinion refer to the relevant provisions in effect when appellant committed the criminal acts that are the subject of this appeal.

2. In *Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

South Florida drug underworld. In addition, appellant signed a written consent authorizing Operation Greenback agents to search his business office in Coconut Grove, Florida.

Beginning that evening, federal agents conducted a thorough search of appellant's business premises, during which they encountered a locked closet in appellant's office. Appellant had told the agents that the key to the closet was in the attache case that the agents had already seized from the Lear jet, but the agents decided to pick the lock and open the closet instead of retrieving the key. The closet contained a number of bags, two of which contained several firearms, including an Uzi semi-automatic assault rifle. Another bag contained approximately sixty-two pounds of highly pure cocaine, next to which the agents found a scale and a device used to measure the purity of substances such as cocaine.

After discovering these items, the agents proceeded to appellant's home, where they placed him under arrest. He asked what had prompted the arrest and, after being informed about the cocaine, he stated that he had forgotten that his office closet contained the illicit drugs. Appellant then consented to a search of his home, in which the agents found additional firearms and a substantial amount of counterfeit currency.

### B.

The Government brought a sixty-two count indictment against appellant in the United States District Court for the Southern District of Florida. The indictment charged appellant with racketeering, unlawful transportation of drug proceeds, failure to file CTRs and CMIRs, possession of cocaine with intent to distribute, and unlawful possession of counterfeit currency. Appellant moved to suppress virtually all the evidence that had been uncovered in the course of the investigation. The district court held that the stop and search of appellant's plane was lawful, but suppressed as being beyond the scope of the consensual search the evidence that the Government had obtained by opening the

locked office closet. The court also suppressed the evidence the agents had obtained from appellant's home after his arrest, finding that the agents should have obtained a search warrant. The Government appealed the district court's suppression order, *see* 18 U.S.C. § 3731 (1982) (authorizing Government appeal of suppression orders), and a panel of this court reversed. *United States v. Milian-Rodriguez,* 759 F.2d 1558 (11th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). We held that appellant had consented to the search of his office closet and that his warrantless arrest and the subsequent search of his home was justified by several exigent circumstances, including the possibility that he might flee, pose a danger to arresting officers or to the public, or destroy or remove evidence.

On remand, appellant brought a renewed motion to suppress evidence obtained from the search of his plane, based on *United States v. Chemaly,* 741 F.2d 1346 (11th Cir.1984), *vacated,* 741 F.2d 1363, *reinstated,* 764 F.2d 747 (11th Cir.1985) (en banc). The district court denied the motion both because it was untimely and because it was meritless. The jury thereafter returned guilty verdicts on all counts of the indictment except the charge of possession of cocaine with intent to distribute, on which the jury was unable to reach a verdict, and the charge concerning possession of counterfeit currency, on which the jury acquitted appellant. By stipulation of the parties and with the consent of the district court, the cocaine possession count was submitted to the trial judge for adjudication based on the pre-existing trial record. Subsequently, the court found appellant guilty on that count. Appellant then brought this appeal, challenging his convictions on five grounds, only two of which warrant discussion. We affirm.

### II.

Appellant's primary claim of error is that the district court failed to suppress the fruits of the warrantless outgoing border search of his Lear jet. According to appellant, the warrantless search of his plane

violated 31 U.S.C. § 5317 (1982), as this court interpreted that statute in *United States v. Chemaly,* 741 F.2d 1346 (11th Cir.1984), *vacated,* 741 F.2d 1363, *reinstated,* 764 F.2d 747 (11th Cir.1985) (en banc). Section 5317(a) provides as follows:

The Secretary of the Treasury may apply to a court of competent jurisdiction for a search warrant when the Secretary reasonably believes a monetary instrument is being transported and a report on the instrument under section 5316 of this title has not been filed or contains a material omission or misstatement. The Secretary shall include a statement of information in support of the warrant. On a showing of probable cause, the court may issue a search warrant for a designated person or a designated or described place or physical object. This subsection does not affect the authority of the Secretary under another law.

In *Chemaly,* this court observed that section 5317 imposed a *statutory* warrant requirement to protect tourists and other travelers from "random, warrantless searches" by law enforcement officers seeking evidence of federal currency reporting violations. *Chemaly,* 741 F.2d at 1350. In response to the government's contention that the "border exception" to the fourth amendment's warrant requirement rendered warrantless searches lawful, the court held that the border exception does not relieve the government of the section 5317 warrant requirement in the case of an outgoing border search involving possible currency reporting violations. *Id.* at 1351–52. We stated as follows:

To construe the statute as suggested by the government would render it meaningless. Individuals traveling out of the country violate the currency reporting requirements at the border, if at all. Congress manifested its intent to preserve the privacy of tourists and travel-

ers departing this country by requiring a warrant to search for currency reporting violations. To hold that the general border search exception allows such searches for currency violations without probable cause and a warrant would remove that privacy protection at the place where Congress intended for it to attach.

*Id.* at 1351 (footnote omitted). Less than one month after the *Chemaly* decision was handed down, Congress amended section 5317 to provide express authority for warrantless searches of the type invalidated in that case. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, tit. II, § 901(d), 98 Stat. 2135 (codified at 31 U.S.C. § 5317(b) (Supp. III 1985)) ("A customs officer may stop and search, without a search warrant, a vehicle, vessel, aircraft, or other conveyance, envelope or other container, or person entering or departing from the United States with respect to which or whom the officer has reasonable cause to believe there is a monetary instrument being transported in violation of section 5316 of this title."); *see* S.Rep. No. 225, 98th Cong., 2d Sess. 302–03, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3482. Nonetheless, we are bound by *Chemaly* in assessing the validity of the search in this case because the search took place on May 4, 1983, prior to Congress' 1984 clarifying amendment.

The district court denied appellant's motion to suppress on two grounds. First, it found that the motion was untimely. Alternatively, it concluded that *Chemaly* was distinguishable from the instant case because the federal agents in this case had probable cause to search appellant's plane and their failure to obtain a warrant was excused by exigent circumstances.[3] We affirm based on the first ground and thus find it unnecessary to address the district court's alternative ground for denying the suppression motion.

---

**3.** Ruling from the bench on the suppression motion, the district court stated as follows:

It is my view that the motion is not timely filed in [that] case law on this was well known. And this case has been—was filed in '83.

But even that, reaching the merits of the decision, I find nothing here that would cause me to change the previous ruling of this Court.

I find that the Government had probable cause and that there were exigent circumstances requiring the action taken here.

■ Under Fed.R.Crim.P. 12(b)(3), motions to suppress evidence must be made before trial. It is undisputed that appellant's motion to suppress based on *Chemaly* was made prior to trial. Rule 12(c), however, permits a district court, "at the time of the arraignment or as soon thereafter as practicable, [to] set a time for the making of pretrial motions or requests." Rule 12(f) describes the effect of a party's failure to comply with the deadlines the court has duly established:

> Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

*See United States v. Echols*, 577 F.2d 308, 311 (5th Cir.1978) (district court acted within its discretion in denying motion to suppress that was filed "over one year after the trial court had set pretrial motions to be heard and just six days before trial"), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1288, 59 L.Ed.2d 499 (1979);[4] *see also United States v. Mangieri*, 694 F.2d 1270, 1283–84 (D.C.Cir.1982) (noting limited scope of review of district court's denial of suppression motion pursuant to Rule 12(f)).

The district court in this case did not abuse its discretion in finding that appellant's presentation of the *Chemaly* argument was untimely and that the delay was inexcusable. The panel opinion in *Chemaly* was issued on September 20, 1984, and on June 6, 1985, the en banc court vacated its order granting rehearing en banc and reinstated the panel opinion. On August 16, 1985, the district court held a status conference, pursuant to which it ordered the parties to file all pretrial motions on or before September 25, 1985. The order specifically stated that "[a]ny motion filed after that date will be denied as untimely." Appellant nonetheless did not move the court for reconsideration of its suppression decision until November 13, 1985. This motion was filed within a few days of appellant's trial, forty-nine days after the district court's filing deadline, nearly fourteen months after the *Chemaly* decision, and more than five months after the en banc court denied rehearing en banc in that case. These facts demonstrate inexcusable delay and last-minute motion filing. Counsel for appellant, at oral argument before this court, defended the delay solely on the ground that he did not learn of the *Chemaly* case "until a few weeks or a week or so before I actually went ahead and made that motion." This excuse will not, and cannot, suffice in any orderly system of decision-making.

■ Appellant contends that the waiver of his *Chemaly* argument should be excused because (1) the district court, in its alternative holding, addressed the merits of this contention, or (2) the failure to suppress the incriminating evidence is plain error in light of *Chemaly*. Both of these justifications are unpersuasive. First, the district court's indication of its view on the merits of the *Chemaly* claim did not automatically excuse appellant's waiver of that claim. *See United States v. Worthington*, 698 F.2d 820, 824 (6th Cir.1983) (district court's decision to deny suppression motion both on timeliness grounds and on the merits does not excuse waiver under Rule 12(f)); *United States v. Sisca*, 503 F.2d 1337, 1349 (2d Cir.) (same), *cert. denied*, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). Although the district court "*for cause shown* may grant relief from the waiver," Fed.R.Crim.P. 12(f) (emphasis added), appellant did not show cause for his failure to raise *Chemaly* in timely fashion, and the district court never indicated that it would excuse the waiver and decide the *Chemaly* issue solely on the merits. Thus, the cases appellant cites for the proposition that a party's waiver is excused if the district court proceeds to entertain the merits of the party's untimely motion, *see, e.g., United States v. Contreras*, 667 F.2d 976, 978 n. 2 (11th Cir.) (merits of suppression

---

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

issue properly before court of appeals because district court entertained and ruled on merits of suppression motion), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982), are inapposite.

█ Second, the district court's failure to suppress the evidence in this case in the wake of *Chemaly* was not plain error. The Government argues that *Chemaly,* 741 F.2d at 1353, is distinguishable because the law enforcement officers in that case lacked probable cause for their search, while the agents in this case indisputably had sufficient probable cause. Further, the Government notes that *Chemaly* dealt solely with the border search exception to the fourth amendment warrant requirement, *id.* at 1351, and did not address the exceptions for exigent circumstances and for vehicle searches, both of which arguably apply in this case. *See United States v. Rojas,* 671 F.2d 159, 165–66 (5th Cir. Unit B 1982) (finding exigent circumstances in warrantless arrest of defendant who was about to depart on an international flight while in violation of currency reporting requirements); *United States v. Flickinger,* 573 F.2d 1349, 1357 (9th Cir.) (discussing applicability of vehicle exception to search of aircraft), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978), *overruled on other grounds, United States v. McConney,* 728 F.2d 1195 (9th Cir.), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We do not intimate a conclusion on the merits of the Government's attempt to distinguish *Chemaly,* but rather hold that the district court's refusal to apply *Chemaly* to the facts of this case does not constitute plain error. *See United States v. Meadows,* 523 F.2d 365, 368 & n. 5 (5th Cir.1975) (plain error rule applicable only when error is manifest and substantial), *cert. denied,* 424 U.S. 970, 96 S.Ct. 1469, 47 L.Ed.2d 738 (1976). Accordingly, we affirm the district court's denial of appellant's motion to suppress the fruits of the Government's search of his plane.

### III.

Appellant's second contention is that the district court abused its discretion when it refused to allow him to depose foreign witnesses whom he alleged were unavailable because of Government misconduct. On September 20, 1985, appellant moved the district court to allow him to depose several foreign witnesses in Panama and Guatemala who would provide testimony favorable to the appellant and who did not want to come to the United States because they feared Government harassment.[5] *See* Fed.R.Crim.P. 15(a). In response, the Government contended that appellant's motion was untimely, was unsupported by sworn affidavits, did not establish that the foreign witnesses were unavailable, and failed to demonstrate that the witnesses would provide material testimony. Nonetheless, on October 15, 1985, the court granted appellant's motion. Two days later, the Government moved the court to reconsider its order permitting foreign depositions. The district court denied the Government's motion on October 21.

On November 7, 1985, appellant moved the court to allow him to take the deposition of Gonzalo Gomez, one of the witnesses who was to be deposed in Central America.[6] According to the motion, "Gomez has agreed to travel to Canada in order to give his deposition"; appellant therefore sought to take the Gomez deposition in Montreal, Canada. The court held a telephone conference on November 8, 1985, the subject of which was appellant's latest motion. At the conference, the Government stated its opposition to the motion on the same grounds that it gave concerning appellant's prior motion, as well as on the ground that Gomez' testimony would be cumulative. The court denied appellant's motion on several grounds: (1) there was no indication that Gomez was necessarily subject to

---

5. The record on appeal does not contain appellant's motion itself, but does contain his memorandum of law in support of the motion.

6. Appellant attached Gomez' unsigned, unsworn affidavit to his motion. The affidavit indicated that Gomez would testify concerning the bag of cocaine found in appellant's office.

criminal prosecution if he came to the United States to testify and no indication that the witness was otherwise unavailable or unable to travel; (2) Gomez' testimony was cumulative; and (3) given his willingness to travel to Canada, Gomez could travel to the United States and testify in person at the trial.

■ Finally, on November 13, 1985, the district court addressed appellant's contention that Government misconduct had rendered defense witnesses unavailable. The district court's ruling was in the context of the Government's motion for reconsideration of the court's order adopting the Report and Recommendation of Magistrate

Herbert S. Shapiro. The magistrate had concluded that the Government had acted improperly in its questioning of Bernardo Oronoz, a business associate of appellant. The district court rejected the magistrate's finding and concluded that the Government had not acted improperly. Based on the district court's analysis,[7] we also conclude as a matter of law that no Government misconduct took place in this case and that the Government did not improperly cause any defense witness to be unavailable.

■ We now turn to the question whether the district court abused its discretion when it refused to permit appellant to de-

7. The district court discussed and disposed of the Oronoz issue as follows:

The defendant's motion to dismiss the indictment cited several instances of alleged government misconduct. The magistrate found that only the claims of misconduct involving Bernardo Oronoz merited any form of relief. Oronoz is a business associate of the defendant. In March 1984 the defendant sought permission to travel in foreign countries as an employee of Exportran S.A., a company owned and operated by Oronoz. During the hearing that was held on that motion, the Magistrate authorized government agents to interview Oronoz in order to determine whether Exportran was a "bona-fide, legitimate operation...." (Magistrate's Report and Recommendation, p. 7). The Magistrate did not expressly limit the scope of the inquiry. On the contrary, he implied that the scope of inquiry would be left to the government agent when he stated, "I'd want the DEA agent to make his inquiries and I'm sure he's astute enough to know what questions to ask...." *Id.* at 8.

When the interview was held, the agent asked questions about the ownership of a home pledged as security for the defendant's bond; about whether Oronoz had agreed to pretend to purchase a shopping center; and questions about Exportran. In the motion to dismiss, the defendant argued that the interview exceeded the scope of inquiry authorized by the magistrate and caused the witness to feel intimidated and harassed. As a result, defendant claimed, Oronoz has stated he is no longer available as a defense witness. In fact, Oronoz has stated that he will rely on the fifth amendment and refuse to testify at trial if called. However, this was on the advice of his own counsel, and that advice was not necessarily related to the government interview of Oronoz. Magistrate Shapiro explained, "One cannot conclude that such advice would not have been given by counsel if the interview had never taken place."

In his report and recommendation, the Magistrate agreed with the defendant and found that the government was guilty of misconduct. However, this court concludes that such a finding was clearly erroneous. This finding was also rejected by Judge Terrell Hodges when he reviewed the Report and Recommendation as it pertained to the defendant's trial on tax fraud charges. As explained by Judge Hodges in that case:

The Magistrate himself had expressed a proper curiosity concerning the legitimacy of the Defendant's prospective employment, and the interview was arranged with the acquiescence of the defense. It did not take place as a result of some trickery on the part of the Government, and no clear direction or instruction had been given to either the Assistant United States Attorney or to the interviewing agent concerning the precise areas to be covered or, more specifically, any precise areas that should not be covered during the interview. Moreover, it is difficult to see how the Government acquired an "unfair advantage" of the Defendant. Mr. Oronoz gave no incriminating information during the interview, nor did he give the Government any leads which later produced incriminating evidence. At the most, the witness has simply elected not to participate further on either side of the case by asserting his Fifth Amendment privilege; and, as the Magistrate himself recognized, this came about on the advice of Mr. Oronoz' counsel....

*United States v. Ramon Milian-Rodriguez,* No. 84–161–Cr–WMH (S.D.Fla., Aug. 9, 1985) (order on all pending motions).

There is no basis for the defendant's claims of government misconduct; nor is there any reason to find that Oronoz has been rendered "unavailable" because of the government's conduct.

pose his foreign witnesses.[8] Federal Rule of Criminal Procedure 15(a) provides as follows:

> Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken by deposition . . . .

The decision whether to allow such depositions is committed to the discretion of the district court, *United States v. Bello*, 532 F.2d 422, 423 (5th Cir.1976) (per curiam), but the use of depositions in criminal cases is not favored because the factfinder does not have an opportunity to observe the witness' demeanor. *See United States v. Wilson*, 601 F.2d 95, 97 (3d Cir.1979).

The appellant in this case failed to demonstrate sufficient exceptional circumstances to warrant the use of depositions. First, appellant's motions did not include any supporting affidavits, except the unsigned, unsworn affidavit of Gomez. Second, the motions were filed in the late stages of the pretrial proceedings. Third, appellant proffered no evidence of exceptional circumstances except his claim that the Government had improperly harassed potential defense witnesses and that the witnesses feared further harassment or prosecution. These allegations are the keystones on which he sought the depositions. Our conclusion that the allegations are unfounded leads us to agree with the district court's belated conclusion that appellant was not entitled to obtain the depositions. Thus, we need not address the Government's other arguments in support of the district court's ruling.

## IV.

Appellant's remaining arguments are meritless and warrant no discussion. Accordingly, the judgment of the district court is

AFFIRMED.

---

8. The record on appeal, including the supplemental record, does not contain any written indication that the district court reconsidered or revised its October 15, 1985 order permitting foreign depositions, except as to Gomez. We are troubled by the silence of the record on this point, but will assume—as represented in the parties' briefs—that the district court reversed itself and denied appellant the opportunity to take the depositions of any of his foreign witnesses (Henry Ford, Lincoln Cohen, Jorge Cohen, Angel Avendano, Bernardo Oronoz, and Gonzalo Gomez).