[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 15, 2009
THOMAS K. KAHN
CLERK

No. 08-10322
Non-Argument Calendar

_____

D. C. Docket No. 07-20470-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUY SALOM,
a.k.a. Roberto Falcon,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 15, 2009)

Before BLACK, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Guy Salom, proceeding *pro se*, appeals his convictions for conspiracy to possess with intent to distribute at least 100 marijuana plants, and to maintain a drug-involved premises, 21 U.S.C. § 846, possession with intent to distribute at least 100 marijuana plants, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii), and maintaining a drug-involved premises, 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2. Salom raises a number of issues on appeal: (1) the district court erred by denying his motion to suppress evidence; (2) the district court made various procedural and evidentiary errors during his trial; (3) the evidence presented at trial is insufficient to support the jury's finding that he possessed at least 100 marijuana plants; (4) the Government failed to provide him with certain potentially exculpatory evidence, as required by *Brady v. Maryland*, 83 S. Ct. 1194 (1963); (5) his trial counsel provided him with ineffective assistance; and (6) the errors which he has identified had the cumulative effect of depriving him of his right to a fair trial. We address each issue in turn, and upon careful review we affirm Salom's convictions.

**I.**

On appeal, Salom argues the district court erred in denying his motion to suppress evidence seized during the officers' search of his van and a subsequent search of a house located at 14780 S.W. 159th Street in Miami (159th Street house).

In reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and its application of the law to those facts *de novo*. *United States v. Mercer*, 541 F.3d 1070, 1073-74 (11th Cir. 2008). When a district court denies a motion to suppress on the basis that it is untimely, however, we review only for an abuse of discretion. *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).

The Federal Rules of Criminal Procedure provide that a motion to suppress evidence must be made before trial. Fed. R. Crim. P. 12(b)(3)(C). In addition, a district court has discretion to set a deadline for the parties to file pretrial motions. Fed. R. Crim. P. 12(c). Any Rule 12(b)(3) defense that is not raised by a deadline set by the court under Rule 12(c) is waived, although the district court may grant relief from that waiver rule for good cause shown. Fed. R. Crim. P. 12(e); *see also United States v. Milan-Rodriguez*, 828 F.2d 679, 682-84 (11th Cir. 1987) (holding the district court did not abuse its discretion by denying as untimely a motion filed after deadline set under Fed. R. Crim. P. 12(c)). This waiver rule applies even if the district court also addressed the merits of the untimely motion. *Milan-Rodriguez*, 828 F.2d at 683.

In this case, the district court informed the parties that all motions *in limine* needed to be filed no later than August 15, 2007. Salom's codefendant Echavarria did not file his motion to suppress until August 24, 2007, and Salom did not file his motion to adopt Echavarria's motion to suppress until August 27, the morning of the first day of trial. Therefore, the district court did not abuse its discretion by denying Salom's motion as untimely.

## II.

Salom argues the district court made various procedural and evidentiary errors during his trial, which we address in turn.

### A.    *Opening Statements*

Salom argues the district court abused its discretion in limiting his defense counsel's opening statement. Salom also argues it was improper for the district court to remark that Fernando Quintana, a codefendant who later pled guilty and agreed to cooperate with the Government, had to "please" the court, as well as the prosecutor, to receive the benefit of a substantial assistance motion.

We review a district court's conduct during trial for an abuse of discretion. *United States v. Verbitskaya*, 406 F.3d 1324, 1337 (11th Cir. 2005). As Chief Justice Burger explained, the purpose of an opening statement "is to state what evidence will be presented, to make it easier for the jurors to understand what is to

4

follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." *United States v. Dinitz*, 96 S. Ct. 1075, 1082 (1976) (Burger, J., concurring). The district court may "exclude irrelevant facts and stop argument if it occurs." *United States v. Zielie*, 734 F.2d 1447, 1455 (11th Cir. 1984), *abrogated on other grounds by United States v. Chestang*, 849 F.2d 528, 531 (11th Cir. 1988).

Generally, a trial judge must scrupulously avoid expressing any opinion on the merits of a case or on the weight of particular evidence. *United States. v. Sorondo*, 845 F.2d 945, 949 (11th Cir. 1988). "[I]n order to amount to reversible error, a judge's remarks must demonstrate such pervasive bias and unfairness that they prejudice one of the parties in the case." *Verbitskaya*, 406 F.3d at 1337 (citation and quotation marks omitted).

In this case, the district court did not abuse its discretion in limiting defense counsel's opening statement because defense counsel was challenging the motives of the Government's main witness, Quintana, rather than simply explaining the evidence to the jury. Moreover, it does not appear that the district court's statement, "He has to please me, too," was intended as a comment on Quintana's credibility or on the merits of the defense's case. Also, it is unlikely that the court's brief remark, made at the beginning of trial, had any influence on the jury's

5

verdict.

*B.    Rule 404(b) Evidence*

Next, Salom argues he was denied a fair trial due to the improper introduction of evidence that he committed other crimes.  Moreover, he notes the Government did not provide notice that it was going to introduce this evidence, as required by Fed. R. Evid. 404(b).

Generally, we review a district court's evidentiary rulings for an abuse of discretion.  *United States v. Edouard*, 485 F.3d 1324, 1343 (11th Cir. 2007).  Because Salom did not raise any Rule 404(b) objections during trial, however, we are reviewing this claim only for plain error.  *Id.*

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  However, such evidence is not extrinsic, and therefore is admissible, if it is: "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense."  *Edouard*, 485 F.3d at 1344 (citation and quotation marks omitted).

In this case, Quintana's testimony concerning mortgage fraud he and Salom

6

had committed when Quintana purchased the 159th Street residence, and the theft of electricity to conceal the fact that they were using powerful lamps to grow marijuana, reflected uncharged conduct that arose out of the same series of transactions as the charged drug offenses because it showed how Quintana and Salom conducted their marijuana-growing conspiracy. In addition, Quintana's testimony concerning Salom's use of aliases was inextricably intertwined with the charged offenses because it showed that Salom tried to conceal his involvement with the 159th Street house by placing a false name on the lease. Because this evidence was intrinsic to the charges against Salom, the district court did not abuse its discretion by admitting it.

### C. Limitations on Cross-Examination

Salom also asserts the district court improperly limited his cross-examination of Quintana.

Under the Confrontation Clause of the Sixth Amendment, a criminal defendant has the right to cross-examine a witness in order to show bias, prejudice, or ulterior motives for testifying. *Davis v. Alaska*, 94 S. Ct. 1105, 1110 (1974). The need for full cross-examination is particularly important "where the witness is the star government witness or participated in the crimes for which the defendant is being prosecuted." *United States v. Williams*, 526 F.3d 1312, 1319 (11th Cir.

7

2008). Nevertheless, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 106 S. Ct. 1431, 1435 (1986). The test is "whether a reasonable jury would have received a significantly different impression of the witness' credibility had counsel pursued the proposed line of cross-examination." *Williams*, 526 F.3d at 1319 (citation and quotation marks omitted).

In this case, Salom was allowed to cross-examine Quintana concerning his motives for testifying, and Quintana acknowledged he was hoping to receive a reduced sentence in exchange for his testimony. Therefore, the jury was aware that Quintana had a motive for giving testimony that was favorable to the Government. Any additional questions concerning whether Quintana was trying to avoid a sentencing enhancement based on his son's overdose would merely have reinforced that impression, and would not have given the jury a significantly different picture of Quintana's credibility. Therefore, the district court's decision to disallow that line of questioning did not violate the Confrontation Clause.

D.     *Hearsay/Confrontation Clause*

Next, Salom argues Detective Rodriguez's testimony concerning a tip he

8

received from a confidential informant constituted inadmissible hearsay.

As noted above, we review a district court's evidentiary rulings for an abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). Generally, we review constitutional claims *de novo*. *United States v. Williams*, 527 F.3d 1235, 1239 (11th Cir. 2008). However, because Salom did not offer a Confrontation Clause objection during trial, we review that claim for plain error only. *See United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009) (noting a hearsay objection does not preserve a Confrontation Clause issue for appellate review).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "Statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice. . . ." *Baker*, 432 F.3d at 1209 n.17.

"[T]he Confrontation Clause of the Sixth Amendment prohibits the admission of out of court statements that are testimonial unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the

9

declarant." *Jiminez*, 564 F.3d at 1286. "[T]he Confrontation Clause prohibits *only* statements that constitute impermissible hearsay." *Id.*

In this case, Detective Rodriguez's testimony regarding the confidential informant's tip was not introduced to show that there actually was a marijuana hydroponic laboratory at the 159th Street house. Rather, Detective Rodriguez was simply explaining why he decided to investigate the 159th Street house. In addition, this testimony did not result in any unfair prejudice to Salom because the confidential informant did not suggest that Salom was involved with the 159th Street house. Accordingly, the district court did not abuse its discretion by admitting the confidential informant's statement as non-hearsay. Finally, because the confidential informant's statement was not hearsay, admission of that statement did not violate the Confrontation Clause.

### E. Improper Vouching

Next, Salom argues the prosecutor improperly vouched for the truthfulness of Detective Rodriguez's testimony by asking him on redirect examination whether he stood upon his oath, and whether he knew that he was under oath.

A claim of improper vouching by the prosecution presents a mixed question of law and fact that is subject to plenary review. *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991). Normally, a prosecutor may not personally vouch for

the credibility of a witness. *Eyster*, 948 F.2d at 1206. The test for improper vouching is whether "the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." *Id.* In applying that test, we consider whether the prosecutor: (1) "placed the prestige of the government behind the witness by making explicit assurances of the witness's credibility," or (2) "implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony." *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996).

In this case, the prosecutor's questions to Detective Rodriguez were intended to show that Detective Rodriguez continued to stand by his direct testimony, despite the fact that there were inconsistencies with his report. The prosecutor did not express a personal belief that Detective Rodriguez was telling the truth, nor did he suggest that there was evidence not presented to the jury that supported Detective Rodriguez's testimony. Thus, the prosecutor did not engage in any improper vouching.

F.    *Comment on Failure to Testify*

Next, Salom asserts the district court should have granted his motion for a mistrial based on the prosecutor's improper comments concerning Salom's decision not to testify at trial.

11

We review a district court's denial of a motion for a mistrial based on a prosecutor's statements during closing argument for abuse of discretion. *United States v. Knowles*, 66 F.3d 1146, 1163 (11th Cir. 1995). "A prosecutor's statement violates the defendant's right to remain silent if either (1) the statement was *manifestly intended* to be a comment on the defendant's failure to testify; or (2) the statement was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *Id.* at 1162-63 (citation and quotation marks omitted). The prosecutor's remarks "must be examined in context, in order to evaluate the prosecutor's motive and to discern the impact of the statement." *Id.* at 1163.

During closing arguments, the prosecutor noted that Quintana and Salom knew each other since 2004 or 2005 and acknowledged that Quintana was a convicted felon who had committed mortgage fraud. The prosecutor then stated,

> Guess who his partner in the mortgage fraud was? Now, is that a big stretch to believe under all of this what they were doing on June 4th to go back in time, to go back in time, to go back in time to 2004, to 2005, when he's not saying he didn't know him. Nobody said specifically with reference to Mr. Salom - -

After defense counsel objected and reserved a motion, the prosecutor continued: "There's no suggestion from Mr. Quintana's testimony that was found to be untrue. He was cross examined on that issue. He was cross-examined vigorously."

12

It is unclear whether pronoun "he" in the prosecutor's statement "he's not saying he didn't know him," was meant to refer to Salom or Quintana. Moreover, it is not clear what the prosecutor meant by saying, "Nobody said specifically with reference to Mr. Salom," because the prosecutor never completed that sentence. Given the ambiguity of the prosecutor's remarks, it does not appear that a jury would "necessarily and naturally" interpret those remarks as a comment on Salom's decision not to testify. Also, there is no indication that the prosecutor "manifestly intended" to comment on Salom's failure to testify. Accordingly, the district court did not abuse its discretion in denying Salom's motion for a mistrial.

G. *Salom's Requested Jury Instruction*

Salom also asserts the district court erred by declining to issue his proposed jury instruction.

We review a district court's refusal to give a requested jury instruction for an abuse of discretion. *United States v. Fulford*, 267 F.3d 1241, 1245 (11th Cir. 2001). A court's failure to give a requested jury instruction only constitutes reversible error if: "(1) the requested instruction correctly stated the law; (2) the actual charge to the jury did not substantially cover the proposed instruction; and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." *Id.*

13

Here, Salom requested an instruction that, if the jury were to find that a witness was lying about a particular fact, then it could infer the opposite of that witness's testimony. Although Salom's proposed instruction was essentially a correct statement of the law, the district court's jury instructions concerning witness credibility covered the substance of Salom's proposed instruction. Moreover, the court's failure to give the requested instruction did not substantially impair Salom's defense, as he was still permitted to suggest to the jury during closing argument that they could believe the exact opposite of Quintana's testimony. Therefore, the district court did not abuse its discretion by denying Salom's proposed jury instruction.

**III.**

Salom argues the evidence introduced at trial was not sufficient to support the jury's finding that he was responsible for at least 100 marijuana plants.

*A.    Admissibility of the Photographs of the Drug Enforcement
       Administration ("DEA") Warehouse*

Salom asserts the photographs of the DEA warehouse were "false and misleading" because they showed plants that were taken from a different and completely separate grow house. He argues the photographs of the DEA warehouse should not have been admitted into evidence because they were irrelevant to his case.

14

A district court's evidentiary rulings are reviewed for a clear abuse of discretion and "[t]he district court has broad discretion to determine the relevance and admissibility of any given piece of evidence." *United States v. Merrill*, 513 F.3d 1293, 1301 (11th Cir. 2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

In this case, Special Agent Molina testified that the photographs of the DEA warehouse accurately depicted the manner in which the 159th Street plants were stored at the warehouse. This evidence was relevant because it suggested that the agents had, in fact, seized marijuana plants from the 159th Street house. Although Salom argues the plants depicted in the photographs actually came from a different grow house, it is the jury's role to choose between different constructions of the evidence, and Salom had an opportunity to cross-examine Agent Molina concerning the possible discrepancy. The district court did not abuse its discretion by admitting those photographs.

B.     *Sufficiency of the Evidence*

Salom also argues that, if the photographs of the warehouse had been properly excluded, the evidence introduced at trial would have been insufficient to

15

support his convictions.

We review *de novo* whether there is sufficient evidence to support the jury's verdict in a criminal case. *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009). Evidence is sufficient to support a conviction where "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Id.* (citation and quotation marks omitted). We "view[] the evidence in the light most favorable to the government, and draw[] all reasonable factual inferences in favor of the jury's verdict." *Id.*

In this case, the applicable penalty statute for Counts One and Two, 21 U.S.C. § 841(b)(vii), establishes a mandatory minimum sentence of five years' imprisonment for offenses involving 100 or more marijuana plants. As this Court has previously explained, cuttings or seedlings do not count as marijuana plants unless there is "some readily observable evidence of root formation." *United States v. Foree*, 43 F.3d 1572, 1581 (11th Cir. 1995) (citation and quotation marks omitted).

Salom's argument on appeal is that the law enforcement agents failed to inspect the marijuana plants for roots while the plants were still at the 159th Street house, and then inspected the wrong group of plants after they were transported to the DEA warehouse. However, Special Agent Molina testified she counted 166

16

plants while she was at the 159th Street house, she did not recount the plants after they were taken to the warehouse, and she later explained that she only counted those plants that had observable root systems. A jury could reasonably have concluded the plants inspected at the DEA warehouse were the same plants that were seized from the 159th Street house. Accordingly, we conclude the jury's finding that Salom possessed over 100 marijuana plants is supported by sufficient evidence.

**IV.**

Salom asserts the Government failed to disclose potentially exculpatory evidence, as required by *Brady v. Maryland*, 83 S. Ct. 1194 (1963).

We review a defendant's *Brady* objection for plain error where the defendant failed to raise that objection in his motion for a new trial. *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). "[T]he Supreme Court has made it clear that the *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant and that '[t]here is no general constitutional right to discovery in a criminal case.'" *United States v. Quinn*, 123 F.3d 1415, 1421 (11th Cir. 1997) (quoting *Weatherford v. Bursey*, 97 S. Ct. 837, 846 (1977)). In order to prevail on a *Brady* claim, a defendant must establish: (1) the government possessed evidence favorable to him; (2) the defendant did not possess the evidence, nor could he have

17

obtained it himself through reasonable diligence; (3) the government suppressed the evidence; and (4) if the evidence had been revealed to the defense, there is a reasonable probability that the outcome of the proceedings would have been different. *United States v. Perez*, 473 F.3d 1147, 1150 (11th Cir. 2006).

Salom has failed to identify any potentially exculpatory evidence that was improperly withheld by the Government. The record indicates the Government did provide defense counsel with the photographs taken at the 159th Street house and the DEA warehouse. Salom states in his reply brief his defense counsel was given a DVD with the photographs on it and Salom even introduced one of those photographs as a defense exhibit at trial. In addition, Salom describes in his reply brief what the recordings of Quintana's phone calls and personal visits will show, therefore, it appears Salom was able to independently obtain the information contained on those recordings. Finally, although the videotapes of Salom's conversations with his trial counsel might potentially be relevant to an ineffective assistance claim, it does not appear those videotapes would have had any impact on Salom's trial. Therefore, Salom has failed to establish any *Brady* error.

## V.

Salom argues his trial counsel provided him with ineffective assistance by making a "unilateral concession of guilt" and by failing to subject the

18

Government's case to any meaningful challenge.

Generally, we will not review a claim of ineffective assistance of counsel raised on direct appeal where the district court neither addressed that claim nor developed a factual record. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *see also Massaro v. United States*, 123 S. Ct. 1690, 1694 (2003) (noting that it is usually preferable to address ineffective assistance of counsel claims on collateral review rather than on direct appeal).

In this case, the district court did not address the merits of Salom's ineffective assistance claim, nor did the court develop a factual record with respect to that claim. Therefore, Salom's ineffective assistance claim is not cognizable on direct appeal.

## VI.

Salom asserts that, even if the individual errors he has identified are not sufficient to merit reversal, the cumulative effect of these errors deprived him of his right to a fair trial.

We have held that "the cumulative effect of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible." *United States v. Khanani*, 502 F.3d 1281, 1295 (11th Cir. 2007) (citation and quotation marks omitted).

As described above, Salom has not shown that the district court committed any errors.  Therefore, he also cannot establish any cumulative error.

Accordingly, for the above-stated reasons, we affirm Salom's convictions.

**AFFIRMED.**