[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10844
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cr-20895-MGC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICKY JERMAINE ATKINS,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After a jury trial, Ricky Atkins was convicted of one count of conspiracy to engage in sex trafficking of minors, in violation of 18 U.S.C. § 1594(c), and two counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). In this appeal, Atkins challenges his convictions on two main grounds. First, he argues that the district court abused its discretion in denying as untimely his motion to suppress evidence obtained from his cell phone and in admitting the evidence at trial. Second, he contends that the court committed cumulative error by, in addition to admitting the cell-phone evidence, admitting other allegedly unfairly prejudicial evidence regarding the two minor victims and failing to give a limiting instruction. After careful review, we affirm.

## I.

### A.

The trial evidence established that Atkins used his job as a mentor at a Florida Keys shelter for abused and neglected girls to recruit two minor victims, L.P. and G.W., to engage in prostitution for him. Atkins had suggested that the two minors run away from the shelter and work for him as prostitutes. L.P. had engaged in prostitution before (though not for Akins); G.W. had not. On the night of August 15, 2014, the girls left the shelter through the window of their room and then got in touch with Atkins. Soon after, Atkins picked them up and explained that he would take them to his cousin, Sandra Simon, at a motel where the girls

2

would engage in prostitution.  Atkins planned to buy a sports car with their earnings.

Before going to the motel, however, Atkins drove L.P. and G.W. to an apartment, where Atkins said G.W. would be "tested."  At the apartment, three of Atkins's male friends took G.W. upstairs and had sex with her.  L.P. stayed downstairs and had sex with Atkins and one of his friends.  G.W. also gave Atkins oral sex at the apartment before they left for the motel.

After the events at the apartment, Atkins took the two girls to Simon at a Motel 6.  Simon took pictures of the girls and posted ads online.  Over the next few days, both girls had numerous prostitution "dates" at the Motel 6 and other motels. The girls gave their earnings to Simon, who said the money would go to Atkins.

On or around August 19, L.P. and G.W. left Simon to go to the Tampa area with two other people, one of whom L.P. knew from a children's hospital.  After getting into a car accident in Tampa a few days later, L.P. and G.W. were returned to the Florida Keys shelter.  Both girls described encounters with Atkins after returning to the shelter.  G.W. said that Atkins touched her inappropriately and asked her when she would work for him again as a prostitute.  L.P. stated that, on her first night back at the shelter, she complied with Atkins's request for oral sex.

3

**B.**

Atkins and Simon were indicted and charged with one count of conspiracy to engage in sex trafficking of minors, in violation of 18 U.S.C. § 1594(c), and two counts of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (b)(2). Simon pled guilty to one count of sex trafficking of a minor and agreed to cooperate with the United States. Atkins maintained his not-guilty plea and went to trial.

Three different attorneys represented Atkins during the course of the district-court proceedings. In February 2015, before the March 15, 2015, deadline for pretrial motions and while the public defender was representing Atkins, Atkins submitted several *pro se* filings, including a motion to suppress his cell phone and a request for new counsel. After a hearing on these matters, the court relieved the public defender and appointed CJA counsel to represent Atkins. Also, based on Atkins's statements at the hearing, the court treated the *pro se* motion to suppress as effectively withdrawn pending further action by newly appointed counsel. In June 2015, Atkins retained counsel, and the court allowed CJA counsel to withdraw. Atkins was found competent to stand trial in August 2015, and the court set a trial date for October 2015.

In the morning on the first day of trial, October 19, retained counsel filed a motion to suppress evidence obtained from a cell phone that had been seized from

4

Atkins in connection with his arrest. Addressing the motion before jury selection, the district court found that it was "way out of time" and denied it as untimely. Later in the trial, when the government introduced the cell-phone evidence, Atkins objected and the court allowed defense counsel to, in effect, argue the motion to suppress. The court overruled the objection, reiterating that the motion to suppress was untimely but stating that, even if it had been timely, the motion would be denied on the merits.

Both minor victims, L.P. and G.W., testified at trial. Over Atkins's objection, the district court permitted L.P. to testify that she had given oral sex to Atkins at the shelter after returning from Tampa. The court found that this testimony was admissible as both inextricably intertwined with the offense conduct and as evidence of Atkins's intent, motive, and plan under Rule 404(b), Fed. R. Evid. The court gave a standard limiting instruction on the use of "similar acts" evidence before the jury began its deliberations.

To impeach L.P.'s testimony on cross examination, defense counsel played a recorded statement L.P. made to police on September 6, 2014, the first time she spoke with police about the matters in this case. In that statement, L.P. never mentioned Atkins's involvement. To rehabilitate L.P. on redirect, the government offered a second recorded statement she gave to police that implicated Atkins and was consistent with her testimony at trial.

5

In that second statement, L.P. explained that she felt compelled to take G.W. with her when leaving the motel for Tampa with her acquaintance and another person. L.P. stated, "They were just going to take me and leave her, leave [Simon] and G.W. together, but I couldn't do that to G.W. because I know what they'll do to G.W., G.W. will end up—she'll be dead, she going to die if I left her. I had to take her with me." Defense counsel moved for a mistrial, arguing that the testimony implied that Atkins was going to kill G.W. The district court disagreed with counsel's interpretation and denied the motion. The court maintained that L.P.'s statement implied that G.W.'s inexperience made her particularly vulnerable, not that she would be killed by Atkins. The court made clear to the jury that the second recorded statement was being offered for the purpose of judging L.P.'s credibility.

The jury found Atkins guilty of all three sex-trafficking offenses. The district court sentenced Atkins to a total prison term of 380 months. Atkins now appeals.

## II.

Atkins first contends that the district court abused its discretion in denying as untimely his motion to suppress evidence obtained from a cell phone seized from him in connection with his arrest. Atkins asserts that the motion was timely because the court failed to set a pretrial-motions deadline and the motion was filed

6

before trial started.  Atkins also notes that he had filed a *pro se* motion to suppress seven months before trial but the court never held an evidentiary hearing.  On the merits, Atkins argues that suppression of the cell-phone evidence was warranted because the government acted with unreasonable delay in securing a warrant to search the phone in its custody.

We review for an abuse of discretion the denial of a motion to suppress on the grounds of timeliness.  *United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990).  Under Rule 12 of the Federal Rules of Criminal Procedure, district courts may set, extend, or reset a deadline for the parties to make motions that must be filed before trial, including motions to suppress.  Fed. R. Crim. P. 12(b)(3)(C), (c)(1).  If the court does not set a deadline for pretrial motions, "the deadline is the start of trial."  Fed. R. Crim. P. 12(c)(2).  A defendant who "fail[s] to file his motion within the deadlines set by the court . . . waives his right to assert this motion."  *Smith*, 918 F.2d at 1509; Fed. R. Crim. P. 12(c)(3).  Nevertheless, "this waiver may be excused for good cause."  *United States v. Lall*, 607 F.3d 1277, 1288 (11th Cir. 2010).

Here, the district court did not abuse its discretion in denying the motion to suppress as untimely.  Contrary to Atkins's claim on appeal, the district court did set a deadline for pretrial motions.  That deadline was March 15, 2015.[1]  The

---

[1] Atkins suggests that there was no pretrial-motions deadline because an August 5, 2015,

motion to suppress was not filed until October 19, 2015, on the morning of the first day of trial and more than seven months after the March deadline. So the motion was untimely. *See United States v. Echols*, 577 F.2d 308, 311 (5th Cir. 1978) (district court acted within its discretion in denying a motion to suppress that was filed "over one year after the trial court had set pretrial motions to be heard and just six days before trial").[2]

Besides the counseled motion, Atkins argues that the district court should have addressed his timely submitted *pro se* motion to suppress at some point earlier in the proceedings, but we disagree. Our review of the record confirms that the court acted reasonably by not resolving Atkins's *pro se* motion.

The record shows that from the outset of the case, Atkins personally wished to file a suppression motion relating to the seizure of his cell phone, but it appears that Atkins's initial attorney, a federal public defender, was unwilling to do so.

---

scheduling order continuing the trial date—after the court had determined that Atkins was competent to stand trial—did not mention a motions deadline. We disagree. Given that the deadline had long since passed, the lack of a reference to the deadline in the August order is unsurprising and does not suggest that no deadline had been set. Moreover, even apart from the pretrial deadline, Atkins did not clearly raise his current basis for seeking suppression—unreasonable delay in obtaining a search warrant—until after the trial began. The motion to suppress hinted in vague terms at this issue, but it was not sufficiently definite, specific, detailed, and non-conjectural to enable the court to consider the claim. *See United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). Atkins first raised the unreasonable-delay issue in clearer terms when the government admitted the cell-phone evidence during trial. Accordingly, even if the court did not set a motions deadline, the suppression claim he presses on appeal was not timely raised before trial. *See* Fed. R. Crim. P. 12(b)(3)(C) & (c)(1).

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

That disagreement led to Atkins's submission of several *pro se* filings, including a request for new counsel and a motion to suppress the cell phone. The district court held a hearing on these issues on February 20, 2015, during which Atkins told the court that he was unhappy with counsel's defense of the case but that he "didn't want to file [the *pro se* motion to suppress]" at that time. The court granted Atkins's request for substitute counsel and stated that it would not treat Atkins's *pro se* filing as a motion until the issue of counsel was resolved. Immediately thereafter, the court appointed CJA counsel to defend Atkins.

Thus, the district court, quite reasonably in our view, appears to have treated Atkin's *pro se* motion to suppress as effectively withdrawn pending further action by counsel. But from February until the morning of trial in October, defense counsel never informed the court of an intention to seek suppression of the cell phone. While CJA counsel said at a March 2015 status conference that he was thinking about filing a motion to suppress, which the court indicated it would consider, counsel did not raise the issue at the next status conference or file such a motion. So the court never extended or reset the motions deadline.

Then, after the court allowed substitution of retained counsel in June 2015, retained counsel also did not mention any intention of seeking suppression—that is, until he filed a motion to suppress four months later on the morning of trial. Atkins cannot now claim that the district court should have addressed his *pro se*

9

motion to suppress on the merits, or held an evidentiary hearing on the motion, when it was never asked to do so. In fact, retained counsel at trial expressly disavowed the claims made in the *pro se* motion. So the district court did not abuse its discretion by failing to resolve the *pro se* motion to suppress.

Nor has Atkins offered any justification for the delay in filing the counseled motion to suppress. When the district court told defense counsel before jury selection that the motion was "way out of time," counsel neither disagreed with that assessment nor offered an adequate justification for the delay. Counsel's explanation that he had hesitated to file the motion because it was "borderline" and did so only because Atkins demanded it does not amount to good cause. The facts upon which the motion was based were known well before retained counsel took over the defense. And despite multiple changes in defense counsel, the record indicates that the district court was willing to consider a motion to suppress provided it was given reasonable notice in advance of trial. For all of these reasons, the district court did not abuse its discretion in finding that Atkins's suppression motion was untimely and that the delay was inexcusable.

Finally, the district court did not excuse the delay by allowing counsel to argue the merits of the motion during trial and indicating that it would have denied the motion on the merits even if it had been timely. "The district court's indication of its view on the merits of the [suppression] claim did not automatically excuse

appellant's waiver of that claim." *United States v. Milian-Rodriguez*, 828 F.2d 679, 683 (11th Cir. 1987). And the court "never indicated that it would excuse the waiver and decide the [suppression] issue solely on the merits." *Id.*

As for the admission of the cell-phone evidence, in light of the absence of a timely motion to suppress, we review that for plain error. Atkins cannot satisfy that standard here.

He has not demonstrated that any error in admitting the cell-phone evidence was "plain" in the circumstances of this case. *See id.* at 683–84 (reviewing an untimely-raised suppression claim for plain error). For an error to be "plain," it must be "obvious and clear" under current law. *United States v. Dortch*, 696 F.3d 1104, 1112 (11th Cir. 2012).

Atkins sought suppression of the cell-phone evidence on the ground that the government unreasonably delayed obtaining a warrant to search the phone.[3] "A temporary warrantless seizure supported by probable cause is reasonable so long as the police diligently obtained a warrant in a reasonable period of time." *United States v. Laist*, 702 F.3d 608, 613 (11th Cir. 2012) (internal quotation marks omitted). We consider the reasonableness of a delay in obtaining a warrant under the totality of the circumstances. *Id.* As we noted in *Laist*, these are "often

---

[3] Atkins suggests in passing that his phone was seized without probable cause. But he appears to have disavowed this argument during the trial, and the argument is not adequately raised on appeal. So we view this claim as abandoned and do not consider it.

difficult cases" requiring a balancing of privacy-related and law-enforcement-related concerns, including the strength of the possessory interest, the length of the delay, the government's diligence, and the government's interests in holding the property as evidence. *Id.* at 613–14. *Id.* Because the balancing analysis is fact-intensive, no *per se* rule of unreasonableness or even a rule of presumptive unreasonableness applies. *See id.* at 614. "Thus, in some contexts, a delay as short as 90 minutes may be unreasonable; while in others, a delay of over three months may be reasonable." *Id.* (citation omitted).

Here, Atkins has not shown that the district court plainly erred by admitting the cell-phone evidence. The police conducted controlled calls to Atkins's cell phone, so they had reason to believe the cell phone was an instrumentality of the offense. And there is nothing "obvious" or "clear" under the specific facts of this case that the government's 30-day delay in obtaining a warrant to search the phone was unreasonable. Apart from the length of the delay, Atkins has not developed facts, either below or on appeal, that plainly establish that the delay was unreasonable. *See id.* at 613–14.

Atkins claims that "the government did not provide an excuse for the delay." But in reviewing for plain error, "we cannot penalize the Government for failing to introduce evidence" regarding its actions when Atkins's failure to timely move for suppression "seemed to make such a showing unnecessary." *See United States v.*

*Meadows*, 523 F.2d 365, 368 (5th Cir. 1975). Rather, we can find plain error "only if the facts in the record compel the conclusion" that the evidence should have been suppressed. *Id.* Given the "fact-intensive" nature of the balancing calculus, Atkins has not made that showing. *See Laist*, 702 F.3d at 614. For these reasons, we affirm the district court's admission of the evidence obtained from his cell phone.

### III.

Next, Atkins argues that the district court committed reversible error by (1) permitting one of the minor victims, L.P., to testify that she performed oral sex on Atkins after engaging in prostitution for him; and (2) denying his motion for a mistrial after the jury heard L.P.'s statement that the other minor victim, G.W., would have died if L.P. had left her at the motel with Simon, Atkins's cousin and co-defendant. Atkins contends that both statements were unfairly and substantially prejudicial, warranting exclusion under Federal Rule of Evidence 403 if not a declaration of mistrial. Atkins also asserts that the court failed to give limiting instructions to the jury on the use of similar-acts evidence. Finally, he maintains that the district court's errors combined warrant reversal even if they are insufficient to do so on their own.

We review a district court's evidentiary rulings for a clear abuse of discretion. *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003). We also

review for an abuse of discretion a district court's denial of a motion for a mistrial. *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005). A defendant is entitled to a mistrial only upon a showing of substantial prejudice. *United States v. Chastain*, 198 F.3d 1338, 1352 (11th Cir. 1999).

Relevant evidence is generally admissible unless it falls under a rule of exclusion. *See United States v. Troya*, 733 F.3d 1125, 1131 (11th Cir. 2013). Relevant evidence includes "intrinsic" and "extrinsic" evidence. *See id.* What we deem intrinsic evidence may be admissible if it is in some sense part of the story of the charged offense, though not part of the crime itself. *See id.* So, for example, evidence is admissible as "inextricably intertwined" with the charged offense "if it is an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (internal quotation marks omitted). Evidence that is extrinsic to a charged offense—evidence of other crimes or wrongdoing—is admissible if it is relevant to an issue other than the defendant's character, such as intent, motive, plan, or knowledge. *Id.*; *see* Fed. R. Evid. 404(b).

"All admissible evidence, whether intrinsic or extrinsic, must be weighed against Rule 403 prejudice." *Troya*, 733 F.3d at 1331. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, unfair prejudice. Fed. R. Evid. 403. But "Rule

14

403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (internal quotation marks omitted). Because the district court is in a better position to weigh competing concerns under Rule 403 in light of the specific facts of the case before it, "we will find that the district court abused its discretion under Rule 403 in only the rarest of situations." *Id.* Moreover, a limiting instruction can diminish any unfair prejudice caused by the evidence's admission. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011).

Here, the district court did not abuse its discretion with regard to any of the challenged rulings. First, we agree with the district court that L.P.'s testimony that she gave Atkins oral sex after returning to the shelter was admissible as "inextricably intertwined" intrinsic evidence.[4] The testimony was an integral and natural part of the minor victim's account. It echoed her earlier testimony about having sex with Atkins before engaging in the acts of prostitution and, as the court stated, showed "the influence and the improper relationship" that Atkins had with her and G.W., who testified about similar inappropriate contact with Atkins upon returning to the shelter. Moreover, the jury heard admissible and unchallenged

---

[4] The evidence was probably also admissible under Rule 404(b), but we need not decide that issue. In any case, Atkins does not challenge the bases for admission, just the court's failure to exclude the evidence under Rule 403.

15

evidence that Atkins had engaged in other sex acts with the two minors, so any additional prejudicial effect from the challenged testimony was negligible. Thus, the district court did not abuse its considerable discretion under Rule 403.

Second, the district court did not abuse its discretion in denying Atkins's motion after the jury heard L.P.'s statement that G.W. would have died if L.P. had left her alone with Simon at the motel. That statement did not mention Atkins, and the record supports the court's interpretation that the implication of the statement was that G.W. was less "street-wise" than L.P., so she was particularly vulnerable to the dangers of being a teenage prostitute. The district court did not abuse its discretion in concluding that Atkins was not substantially prejudiced by the isolated and ambiguous statement. *See Chastain*, 198 F.3d at 1352.

Third, the record contradicts Atkins's claim that district court failed to give a limiting instruction related to evidence that Atkins had engaged in similar sex trafficking with J.H. While the instruction may not have specifically referenced that evidence, the court instructed the jury as a general matter about how it could and could not properly use "similar acts" evidence, explaining that such evidence could not be considered "to decide whether the defendant committed the acts charged now," but that it could be considered "for other very limited purposes,"

16

including showing intent, plan, or lack of mistake. As a matter of fact, then, the court did not err by failing to give a limiting instruction.[5]

Finally, Atkins has not shown that he was denied his constitutional right to a fair trial by the cumulative effect of the alleged errors. *See United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014). In fact, Atkins has not shown that the court committed any error, so there is no error to accumulate. *See id.*

## IV.

Because the district court did not abuse its discretion in denying as untimely Atkins's motion to suppress, did not plainly err in admitting the evidence obtained from his cell phone, and did not otherwise abuse its discretion during the trial in the ways alleged by Atkins, we **AFFIRM** his convictions.

---

[5] We do not address Atkins's allegations of ineffective assistance in this direct appeal. *See United States v. Patterson*, 595 F.3d 1324, 1328 (11th Cir. 2010). Claims of ineffective assistance are better addressed on collateral review, when they have been more fully developed.